## GREATER MIAMI BASEBALL CLUB LIMITED PARTNERSHIP, Petitioner,

v.

### Allan H. "Bud" SELIG, etc., Respondent.

### No. 96 Civ. 8989 (LAK).

United States District Court, S.D. New York.

Feb. 18, 1997.

Robert Berson and Thomas Kinzler, Kelley Drye & Warren, New York City, for Petitioner.

Robert J. Kheel, Lizbeth Parker, and Bruce A. Albert, Willkie Farr & Gallagher, New York City, for Respondent.

Adam Liptak, New York City, for Intervenor the New York Times Company.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The New York Times Company (the "Times") moves to intervene for the limited purpose of seeking access to and unsealing the deposition of Allan H. "Bud" Selig in this litigation, which concerns the constitution of an arbitration panel charged with resolving a dispute about the compensation to be paid by the Florida Marlins to the petitioner, the owner of the Fort Myers Miracle, a minor league baseball team the territory of which was "drafted" when the Marlins entered the major leagues. Selig opposes public access to his deposition.

### Facts

It is unnecessary for the resolution of this motion to go into the details of the dispute between Selig and the Miracle beyond saying that the agreements governing professional baseball contain provisions permitting major league teams to take, or "draft," territories belonging to minor league teams subject to the requirement that compensation be paid for doing so. Failing agreement on the compensation to be paid, the amount is to be fixed by a seven member Board of Arbitration. The Board shall consist of one representative each of the minor league, the minor league team, the major league, and the major league team, the president of the organization of minor league baseball teams, the Commissioner of Baseball, and a seventh arbitrator who is to be an impartial appraiser selected by the preceding six or, absent such selection, by the Commissioner of Baseball.

A Board of Arbitration for the resolution of this dispute was constituted on the premise that the office of Commissioner of Baseball is vacant. Accordingly, the Professional Baseball Executive Council ("PBEC"), which

is charged with carrying out the responsibilities of the Commissioner when that office is vacant, designated someone to sit on the Board on its behalf and selected the seventh arbitrator. The Miracle contends, among other things, that Selig is at least the *de facto* Commissioner and that he therefore should sit on the Board and select the seventh arbitrator.

Selig has moved to dismiss the petition on a variety of grounds. The motion is *sub judice*. The Court nevertheless permitted limited discovery, including a deposition of Selig, on Selig's status. The parties agreed to a protective order permitting either side to designate material confidential and providing that information so designated would be held in confidence absent contrary order of the Court. (Stipulation and protective order, Jan. 14, 1997) Selig's deposition was so designated.

On January 23, 1997, the Court conducted an evidentiary hearing at which the transcript of Selig's deposition and the exhibits thereto were received in evidence.

### Discussion

■ Judicial records are presumptively subject to public inspection. *United States v. Amodeo,* 71 F.3d 1044, 1047 (2d Cir.1995) (*"Amodeo II "*); *United States v. Amodeo,* 44 F.3d 141, 146 (2d Cir.1995). As the Times contends, the presumption is at its strongest when the document in question, as here, has been submitted as a basis for judicial decision making. *See Joy v. North,* 692 F.2d 880, 893 (2d Cir.1982), *cert. denied sub nom. Citytrust v. Joy,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). Only where countervailing considerations of privacy are sufficient to overcome the presumption may the press be denied access to such documents. *Amodeo II,* 71 F.3d at 1050.

■ Selig's first argument is that the presumption of access to the deposition transcript is minimal because the deposition's role in the determination of the parties' substantive rights is limited. As Selig puts it, the deposition was offered "solely to insure [its] irrelevance." (Resp.Br. 6) (quoting *Amodeo II,* at 1049). The argument, however, is without merit. Selig cannot be sure that he will prevail on the pending motion to dismiss; the matter may well be decided on the merits. If it is, the deposition testimony—which was offered by petitioner, not Selig—may well play an important role in the decision. Accordingly, the presumption of access cannot be dismissed as readily as Selig would have it.

Nor is the fact that the deposition was designated confidential under the protective order entitled to any weight. If courts were obliged to make determinations, item by item, as to the justification for confidentiality of every piece of evidence as to which any party or witness made such a claim during the conduct of discovery, *see* FED.R.CIV.P. 26(c), there would be little time in which to do anything else. In consequence, parties frequently agree, with the courts' approval, that they will maintain in confidence anything produced in discovery as to which the producing party or witness makes such a claim, subject to the right of the party seeking discovery to contest the designation. *See, e.g., Lachica v. City of New York,* No. 94 Civ. 7379 (LAK), 1995 WL 77928 (S.D.N.Y. Feb. 23, 1995). The issue whether the material really should be kept from public view, is left for another day, which fortunately seldom arrives—a circumstance that spares the courts much time which may be devoted to other litigants and the parties many dollars that otherwise would be spent litigating academic questions. That is exactly the sort of protective order entered here. This point is of singular importance. Given the lack of any litigated determination of whether there was good cause for Selig's testimony, which had not yet even been given, to be sealed from public view, Selig had no justifiable basis in assuming that the testimony would remain confidential unless Selig could establish good cause for such treatment.

Selig next contends that public access to Selig's testimony "could result in ... an impairment" of the performance of the Court's Article III functions. (Resp.Br. 8) The argument presupposes justifiable reliance by Selig on the protective order, the theory evidently being that disclosure would make future litigants more reluctant to comply

with discovery requests. (*Id.*) In view of the lack of any justifiable reliance, not to mention the fact that litigants refuse compliance with discovery obligations at their peril, the argument is baseless.

The final point advanced by Selig is the contention that the deposition "contains numerous inquiries into and disclosures of commercially sensitive, confidential information about his private finances and the internal affairs of the twenty-eight Major League Clubs who are not parties to this action." (*Id.* 9) The statement is artfully phrased. While there were inquiries into Selig's private finances, Selig's counsel directed his client not to answer them—so the private information is not in the record. Beyond that, Selig has not favored the Court with any more specific explanation of what in the deposition he regards as sensitive or why. His blunderbuss approach, if accepted, would require the permanent sealing of matters including newspaper clippings. Given that the burden is on the party seeking confidentiality protection to establish the need for it, the failure to do so with any degree of specificity requires the conclusion that good cause has not been shown. In any case, the Court has reviewed the entire transcript and the exhibits and finds that there is no good cause except with respect to one of the exhibits to the deposition, which relates to personal estate planning of a major league owner and which therefore will be protected.

### Conclusion

As the Selig deposition transcript and exhibits are parts of the trial record, they are presumptively matters to which the public is entitled to access. Selig has failed to demonstrate any legally sufficient reason for their continued confidentiality with the exception of Exhibit 16 to the deposition. Accordingly, the motion of The New York Times Company to intervene and for access to and the unsealing of the transcript and exhibits is granted in all respects save that Exhibit 16 to the deposition will be retained under seal.

SO ORDERED.