**UNITED STATES of America, Plaintiff,**

v.

**TOWN OF MOREAU, NEW YORK and General Electric Company, Defendants.**

**The STATE OF NEW YORK, Plaintiff,**

v.

**The UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and The General Electric Company, Defendants,**

**and**

**Glen Falls Newspapers, Inc. d/b/a The Post Star and Brendan Lyons, Intervenors.**

No. 88–CV–0934.

United States District Court, N.D. New York.

Sept. 18, 1997.

As Amended Sept. 25, 1997.

Thomas J. Maroney, United States Attorney for Northern District of New York (James C. Woods, Asst. U.S. Atty., of counsel) ,Albany, NY, U.S. Department of Justice, Environmental Enforcement Section Washington, DC (George A.B. Peirce, of counsel), for Plaintiff United States of America.

Sharon Kivowitz, Office of Regional Counsel, New York, NY, Michael Northridge,

Washington, DC, for Defendant U.S. Environmental Protection Agency.

Dennis C. Vacco , Attorney General of the State of N.Y., Albany, NY (J. Jared Snyder, Ass't Attorney General, of counsel), for Defendant State of New York.

Michael Elder, South Albany, NY, for Defendant General Electric Corporation.

Sullivan, Weinstein & McQuay (Sandra Sue McQuay, of counsel), Boston, MA, for Defendant General Electric Company.

Lewis B. Oliver, Jr., Albany, NY, for Defendant Town of Moreau.

Gleason, Dunn, Walsh & O'Shea (Thomas F. Gleason, of counsel), Albany, NY, for Proposed Intervenors Glens Falls Newspapers, Inc. d/b/a The Post Star and Brendan Lyons.

## MEMORANDUM-DECISION & ORDER

KAHN, District Judge.

### Introduction & Background

This is an action brought under the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. § 9604(e)) and was commenced some nine years ago in an effort to bring about an environmental remedy to a site in the Town of Moreau (the "Town") which had been a disposal facility utilized by defendant General Electric Company ("GE") in the 1950s and 1960s. Presently, it appears that the resolution of this litigation will necessarily involve developing a new public water system for the Town. The matter is, without question, one of significant public interest.

Following a settlement conference held on March 17, 1997, all parties to the litigation consented to the entry of the following order (the "sealing order"):

IT IS HEREBY ORDERED, that all past, present and future drafts of the proposed Stipulation and Order on Consent, or draft settlement agreements referred to by whatever name, and engineering reports, financial reports, attorney work product, and correspondence between counsel for the parties and participants prepared for the purpose of settlement discussions and negotiation in this case, shall be confidential and not disclosed by the parties or their attorneys, until such time as a settlement agreement has been tentatively agreed upon and the parties have agreed to disclose the proposed Stipulation of Settlement and Order on Consent for public discussion and final approval by the clients and relevant public bodies if any. Nothing in this Order shall prohibit the attorneys or the parties from public discussion of the settlement process and certain information that may be contained in portions of the draft settlement agreements so that the public and media may be kept informed about developments in the case.

Dkt. No. 137. Prior to the commencement of the March 17, 1997 settlement conference, Brendan Lyons ("Lyons"), a Post Star [1] reporter, and his attorney informally sought permission to attend. This application was denied.

The Glens Falls Newspapers, Inc. d/b/a The Post Star (the "Post Star") and Lyons now move the Court for intervenor status in this litigation. The proposed intervenors proceed by order to show cause. Their purpose in seeking intervention is to "obtain[ ] information concerning the proposed actions of elected officials in connection with making commitments to other parties with respect to Town resources and with respect to positions of the Town regarding settlement of claims involving significant pollution and the water supply of the Town." Dkt. No. 137. The proposed intervenors' precise mechanism for "obtaining" the information sought is not specified in the application. Presumably, the proposed intervenors seek the right to review any documents affected by the sealing order as well as attend future settlement conferences. Also, although it is not sought as explicit relief, the proposed intervenors apparently seek relief from the March 17, 1994 sealing order.

As additional relief, the proposed intervenors are demanding that the parties "show

1. The Post Star is a daily newspaper circulated in Saratoga and Warren Counties, among other places.

cause why Thomas F. Gleason's April 24, 1997 letter to this Court, and its attachments (constituting the March 12, 1997 letter of Lewis B. Oliver, Jr., Esq. to this Court and accompanying submission) should not be delivered to the Proposed Intervenors." Dkt. No. 137. The "accompanying submission" referred to in the proposed intervenor's application is a settlement conference statement in Mr. Gleason's possession that was prepared on behalf of the Town by its attorney, Lewis B. Oliver, Jr., Esq., and submitted to the Court pursuant to Local Rule 5.7. Local Rule 5.7 provides as follows:

> All pretrial and settlement conference statements shall be provided to the clerk but not filed. These documents are not for public view. Forms for preparation of pretrial and settlement conference statements are attached at Appendix B to the Rules.

N.D.N.Y.L.R. 5.7 (1997). From the record, it appears that Mr. Gleason is in possession of the Town's Rule 5.7 statement through some kind of inadvertent disclosure of the same by Mr. Oliver. The return of the Town's Rule 5.7 statement has been demanded by Mr. Oliver but Mr. Gleason has refused and has placed the issue into the Court's hands.

Since February of this year the Post Star and Lyons have also been seeking a copy of a draft settlement agreement that has been circulated among the parties by means of special proceeding commenced in New York State Supreme Court pursuant to New York's Freedom of Information Law. This proceeding is presently pending.

The State of New York, GE, and the Town have filed papers in opposition to the application of the proposed intervenors. They characterize the relief sought by the proposed intervenors as both extraordinary and unnecessary. They also argue that granting this relief will further delay the resolution of this litigation. The Court heard the oral argument of the proposed intervenors and the parties on May 9, 1997 and reserved decision.

## DISCUSSION

### A. The Nature of the Instant Application to Intervene

With respect to procedure, the proposed intervenors do not specify if they seek inter-vention as of right pursuant to Fed.R.Civ.P. 24(a) or permissively pursuant to Fed. R.Civ.P. 24(b). The Second Circuit has suggested that Rule 24(b) provides the proper procedural route for intervention by a non-party into a private civil action for the purpose of challenging a confidentiality order in order to gain public access to the court's record. *Palmieri v. State,* 779 F.2d 861, 864 (2d Cir.1985); *Martindell v. Int'l Tel. and Tel. Corp.,* 594 F.2d 291, 293 (2d Cir.1979). Rule 24(b) provides in part:

> Upon timely application anyone may be permitted to intervene in an action:
>
> \*     \*     \*     \*     \*     \*
>
> (2) when an applicant's claim or defense and the main action have a question of law or fact in common.
>
> \*     \*     \*     \*     \*     \*
>
> In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b).

The Post Star and Lyons initially argue that their application is timely. For present purposes, it will be assumed that they are correct. More complicated is the question raised by the proposed intervenor's assertion of their constitutional and common law rights. The proposed intervenors primarily rely on their First Amendment rights in arguing that their present application should be granted. They urge that the public's interest in obtaining information relating to the actions of public officials in this matter of significant public concern overrides any basis for confidentiality claimed by the parties.

### B. Who Bears Burden with Respect to the Sealing Order?

At the outset, the Post Star and Lyons argue that it is the burden of the parties that consented to the entry of the sealing order to demonstrate that it was entered for good cause. The parties respond that it is the burden of the proposed intervenors to dem-

onstrate that the sealing order was improvidently granted.

■ Once a confidentiality order is entered and relied upon by the parties it should not be vacated unless the party challenging the order demonstrates extraordinary circumstances or compelling need or that the order was "improvidently granted ab initio." *Palmieri,* 779 F.2d at 864–65. Here, although settlement negotiations have been underway for a number of years, the parties have clearly relied upon the assurance of confidentiality afforded by the entry of the sealing order in embarking upon further settlement negotiations. Indeed, at the time the order was entered, it was the Court's understanding that entry of the order was a condition of further negotiations and thus good cause existed for its entry. The record also supports conclusion that the parties have heretofore negotiated in absolute confidence and have always expected their negotiations to remain confidential. Accordingly, before the proposed intervenors will be granted the relief they seek, it will be incumbent upon them to demonstrate that the sealing order was improvidently granted or that the circumstances are extraordinary or that they have a compelling need for the relief. *See Kamyr AB v. Kamyr, Inc.,* 1992 WL 317529 at *8, No. 91–CV–0453 (Oct. 30, 1992 N.D.N.Y.) (burden remains on party challenging protective order entered for good cause notwithstanding "blanket" nature of order).

### C. The Substantive Law

#### 1. The First Amendment

■ Turning to the merits, the issue of the public's access to court proceedings and documents is an evolving one. *See* Eugene Cerruti, *"Dancing in the Courthouse": The First Amendment Right of Access Opens a New Round,* 29 U.Rich.L.Rev. 237 (1995). This evolution has been in the direction of greater public access. *Id.* at 269–95. In the context of civil cases, the Second Circuit has stated that

> the First Amendment does secure to the public and to the press a right of access to civil proceedings in accordance with the

dicta of the Justices in *Richmond Newspapers* [*Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) ], because public access to civil trials "enhances the quality and safeguards the integrity of the factfinding process," *Globe Newspaper* [*Co. v. Superior Court* ], 457 U.S. [596], 606 [102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982) ], "fosters an appearance of fairness," *id.,* and heightens "public respect for the judicial process," *id.,* while permitting "the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self government," *id.*

*Westmoreland v. Columbia Broadcasting Sys., Inc.,* 752 F.2d 16, 23 (2d Cir.1984). This First Amendment right of access also extends " 'to written documents filed in connection with pretrial motions' even if no hearing is held on the motion." *United States v. Wolfson,* 55 F.3d 58, 59 (2d Cir. 1995) (quoting *In re New York Times Co.,* 828 F.2d 110, 114 (2d Cir.1987), *cert. denied,* 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988)). Whether there is a First Amendment right of access "to a particular stage of the proceeding or to a given class of documents depends on two questions: first, whether there has been a 'tradition of accessibility' to that stage or those documents ... and second, whether that traditional public access 'plays a particularly significant positive role in the actual functioning of the process.' " *Id.* (quoting *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 10–11, 106 S.Ct. 2735, 2742, 92 L.Ed.2d 1 (1986)). It is beyond argument that none of the forms of access sought by the proposed intervenors have ever been traditionally open to the public. *Cincinnati Gas and Elec. Co. v. General Elec. Co.,* 854 F.2d 900, 903 (6th Cir.1988), *cert. denied,* 489 U.S. 1033, 109 S.Ct. 1171, 103 L.Ed.2d 229 (1989). Not surprisingly, the proposed intervenors do not argue to the contrary. Thus, without reaching the second part of the inquiry, the Court finds that the proposed intervenor's First Amendment right to attend a civil trial and inspect motion papers is not implicated in the present proceedings.

### 2. The Common Law

■ A common law right of access to inspect and copy judicial records has also been recognized since before the birth of the Nation. *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir.1995) ("*Amodeo I*"). As a general matter, there is a presumption that judicial records are accessible. *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir.1995) ("*Amodeo II*"). It cannot, however, be said that all documents related in some way to a lawsuit are entitled to the full weight of this presumption. For instance, "documents considered by the court in orders disposing of substantive pretrial motions," *Wolfson*, 55 F.3d at 61, are presumed to be accessible judicial documents while "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Amodeo I*, 44 F.3d at 145. In determining whether a document is a judicial document subject to public access, the court must consider what role the particular documents plays with respect to the court's exercise of Article III power. *Amodeo II*, 71 F.3d at 1049. Documents will invariably fall somewhere along a "continuum," *id.*, between those documents that are involved in the determination of a party's substantive rights—"conduct at the heart of Article III", *id.*,—and those documents which "play only a negligible role in the performance of Article III duties." *Id.* at 1050. The former type of documents are strongly presumed accessible to the public, the latter type are merely presumed accessible "absent a countervailing reason." *Id.*

Bearing the foregoing principles in mind, the Court will now proceed to examine whether the following are presumptively accessible to the public: (i) settlement conferences; (ii) draft settlement proposals circulated among the parties; and (iii) settlement conference statements provided to the court. Next, the Court will examine whether there are any countervailing interests that must be balanced against any presumption of public access found to attach to these three forms of access sought by the Post Star and Lyons.

### a. The Presumption of Access

#### (i). Settlement Conferences

The Court notes that it is not clear that the common law right of access is applicable to judicial proceedings although some courts have suggested that it is. *See United States v. Smith*, 123 F.3d 140 (3d Cir.1997). In view of the Second Circuit's sentiments as expressed in *Amodeo II* where the court noted that "[w]ithout monitoring ... the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings," 71 F.3d at 1048, it will be presumed that the common law right of access reaches judicial proceedings. 71 F.3d at 1048.

■ Without question, trials and hearings held for the purpose of determining the substantive rights of litigants are considered to be judicial proceedings that are presumptively open to the public. Whether a settlement conference held in chambers is a judicial proceeding accessible to the public is, however, another question altogether. Settlement conferences are not now and have never been part of the public process of litigation.[2] To begin with, unlike the requirement to proceed to trial, a party is not faced with the dismissal of his claim or defense if he refuses to engage in settlement negotiations. Settlement negotiations are conducted at the option of the litigants. There is no doubt that settlements are encouraged and facilitated by the court. However, an action can quite properly proceed from complaint through judgment without a word of compromise ever being spoken between the parties. This is, unfortunately, too often the case. Also, the process of compromise can occur in a private setting such as a mediator's office just as it can occur in a judge's chambers. The plain conclusion is that the court can exercise all of

**2.** Fed.R.Civ.P. 77(b) provides that "[a]ll trials upon the merits shall be conducted in open court and so far as convenient in a regular courtroom. All other acts and proceedings may be done or conducted by a judge in chambers, without the attendance of the clerk or other court officials ..." This rule "simply articulates the traditional authority of a judge to speak privately with the parties to a suit, whether in bench conferences or in chambers." *B.H. v. McDonald*, 49 F.3d 294, 298 (7th Cir.1995).

its Article III powers to determine a case or controversy without ever convening a settlement conference. Thus, it cannot be said that discussions of compromise among parties to a lawsuit, even with a judge in attendance, play a large role in the exercise of Article III judicial power. The presumption of public access in the case of settlement conferences is therefore very low indeed, if not nonexistent. *Amodeo II*, 71 F.3d at 1050.

### (ii). Settlement Proposals Circulated Among the Parties

■■■■ "Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach." *Id.* Settlement proposals circulated among the parties are arguably even more distant from the court's Article III function. They do not constitute evidence and are also generally not admissible at trial for any purpose. *See* Fed.R.Evid. 408; Fed.R.Civ.P. 68. Their contents are also uniquely a matter of a party's discretion. Finally, these documents are directed to the opposing parties as an offer of settlement or as a solicitation for such an offer. This is quite apart from papers filed with the court as a predicate for a judicial determination. These documents can thus in no way be said to invoke the power or affect the decisions of the court. *Id.* Quite simply, these documents are not judicial records. *See Enprotech v. Renda*, 983 F.2d 17, 20 (3d Cir.1993). Thus, they do not enjoy any presumption of public access.

### (iii). Settlement Conference Statements Provided to the Court

Although settlement conference statements are provided to the court prior to settlement conferences they are not filed with the Clerk and do not become part of the public court record. N.D.N.Y.L.R. 5.7. In the Rule 5.7 statement forms provided to the parties by the Clerk, the parties are asked, inter alia, to disclose any legal issues that, if resolved, would lead to the settlement of the action. In this way it can be said that these statements seek to invoke the judicial power of the court although they are not formal

motions and are not treated as such. At most, after discussing the matter with the parties, the court might invite a formal motion on an issue presented in a settlement conference statement. It would seem then that these documents "play a negligible role in the performance of Article III duties," *Amodeo II*, 71 F.3d at 1050, and thus the presumption of public access is at most, low.

### b. Countervailing Interests Militating Against Access

■■■■ "Once the weight of the presumption is determined, a court must balance competing considerations against it." *Id.* In this case, the competing consideration is the strong public interest in seeing litigation resolved without resort to the full machinery of justice. *See Bank of America Nat. Trust v. Hotel Rittenhouse*, 800 F.2d 339, 344 (3d Cir.1986).

### (i). Settlement Conferences

■■■■ It is well settled that "a federal judge has the power to prevent access to settlement negotiations when necessary to encourage the amicable resolution of disputes." *City of Hartford v. Chase*, 942 F.2d 130, 135 (2d Cir.1991). From a practical perspective, few cases would ever reach a nonlitigated end if the press was in attendance at a settlement conference or privy to settlement proposals.

A settlement conference is an opportunity for the parties and the court, acting as an impartial mediator, to have a frank discussion about the value of avoiding a trial. During these colloquies, the parties are often called upon to evaluate both the strengths and weaknesses of their respective cases. At a minimum, the parties would be reticent to make any concessions at a settlement conference if they could expect that their statements would be published to the public at large. This is especially true when the litigation engenders press coverage, the instant case being one such example. In a matter that was of significant concern to the public, it is doubtful that a public settlement conference would ever permit the type of give and take that would lead to an agreed resolution of the dispute. Settlement positions are of-

ten extreme and should they be made public a litigant would reasonably fear being judged in the court of public opinion based upon what are nothing more than bargaining positions. These concerns would hardly encourage negotiations. The present case, of interest to the public and the press, clearly presents the need for a private forum in which to explore settlement.

To agree with the proposed intervenors' argument to permit access because of the "vital public interest at issue," would be the death knell of settlement negotiations in cases of this sort. Dkt. No. 136 at 7. As stated by Judge Grady of the Northern District of Illinois:

> To say, then, that the public and the press have a right to be present at all conferences in cases involving issues of great public interest is simply to say that traditional settlement conferences could not occur in those cases. The indispensable attitude for settlement—the willingness to concede that the other side has a point— would be absent ...

*B.H. v. Ryder,* 856 F.Supp. 1285, 1290 (N.D.Ill.1994).

*(ii) & (iii). Settlement Proposals Circulated Among the Parties & Settlement Conference Statements Provided to the Court*

The exchange of written settlement proposals and the opportunity to review an adversary's settlement conference statement serves a purpose similar to a face-to-face settlement conference. These devices give a litigant an occasion to sound out an opponent's position in an effort to determine if a middle ground exists for compromise. Just as privacy encourages candor and frank disclosure in a settlement conference, assuring the confidentiality of a party's written settlement position has a similar effect and, likewise, encourages the resolution of the dispute. These devices have also played a constructive role in moving the instant case toward a settlement.

*c. The Balance*

As noted above, the Court finds that the presumption of public access to settlement conferences, settlement proposals, and settlement conference statements is very low or nonexistent under either constitutional or common law principles. Weighed against this presumption is the strong public policy which encourages the settlement of cases through a negotiated compromise. The instant litigation is quite complex and has been pending for nine years. It is a case which has a dire need of the opportunity to reach a negotiated end. Fortunately, it appears that the long negotiations that have preceded this order have begun to yield fruit. The parties should be encouraged in that pursuit. The proposed intervenors object to private negotiations on the ground that this will leave the public with a settlement to review that is a fait accompli. In a perfect world, the public would be kept abreast of all developments in the settlement discussions of lawsuits of public interest. In our world, such disclosure would, as discussed above, result in no settlement discussions and no settlements. The argument is thus well-meaning but misplaced.

After a careful consideration of the history of these proceedings, it is the Court's opinion that granting the relief sought by the intervenors, which would open all of the settlement negotiation processes to the public, would delay if not altogether prevent a negotiated settlement of this action. This finding alone warrants the denial of the motion. For this reason, the Court also cannot find that the sealing order was improvidently entered in this case.

Contrary to their contentions, the Court finds that the proposed intervenors' interest in ascertaining the facts surrounding the settlement of this action is adequately protected. Important in this finding is the distinction between what has been sealed and what has not been sealed. The parties have represented, and it is the understanding of the Court, that the ultimate settlement agreement reached, if any, will be a subject of public record and will be put before the public for comment before being ratified by the Town Board of the Town of Moreau. Presently, the sealing order only permits the parties to negotiate in private, nothing more. An entirely different question would be presented if the parties sought an order sealing

the final consent decree and its related settlement documents. *See City of Hartford,* 942 F.2d at 135–36.

Similarly, since the Court's record and the proposed settlement agreement will be available to the public, the Court also finds that the proposed intervenors have not demonstrated either extraordinary circumstances or a compelling need for the order to be modified or vacated. Lastly, the Court notes that the public is not without a champion in these settlement negotiations. The State of New York remains a party to these proceedings and has represented that it bears the interests of the public in mind, including the public's interest in having an opportunity to comment on any proposed settlement agreement. Trans. Oral Arg. at 23.

■ Accordingly, the portion of the proposed intervenors' application which requests an order permitting them to "obtain[ ] information concerning the proposed actions of elected officials in connection with making commitments to other parties with respect to Town resources and with respect to positions of the Town regarding settlement of claims involving significant pollution and the water supply of the Town," Dkt. No. 137, must be DENIED. This application is, however, denied without prejudice to contesting any order that would seal any settlement agreement reached in this action.

*d.  Mr. Gleason's Possession of the Town's Rule 5.7 Statement*

■ The proposed intervenors do not cite any authority which supports their request for an order that would permit Mr. Gleason to turn over the errantly sent Rule 5.7 statement to his client. In opposition, the Town notes that Formal Opinion 92–368 of the American Bar Association provides that

> A lawyer who receives materials that on their face appear to be subject to the attorney-client privilege or otherwise confidential, under circumstance where it is clear they were not intended for the receiving lawyer, should refrain from examining the materials, notify the sending lawyer and abide the instructions of the lawyer who sent them.

ABA/BNA Lawyer's Manual on Professional Conduct, ABA Formal Op. 92–368 at 1001–

155 (1993). The dispute between Messrs. Oliver and Gleason would seem to fit precisely within the scope of this opinion. However, neither party has demonstrated how this matter constitutes a justiciable controversy so as to warrant the issuance of the declaration sought by Mr. Gleason or the injunction sought by Mr. Oliver. Of course, the Court will, if necessary, enforce the Code of Professional Responsibility of the American Bar Association (the "Code") among the members of the bar. *See* N.D.N.Y.L.R. 83.4(j). But here no violation of the Code's provisions have been identified. Nor is Mr. Gleason a party to this action. The mere fact that a party has erroneously disclosed a document which that party would rather keep confidential does not automatically bring the recipient within the Court's jurisdiction. Furthermore, the terms of the sealing order plainly do not bind Mr. Gleason. The Court is not in the business of lending a judicial imprimatur to conduct that while legal, may raise ethical issues. Mr. Gleason is free to do as his intelligence and sense of professional ethics direct him. Mr. Oliver has the same prerogative. The Court does note however, that "the credibility and professionalism inherent in doing the right thing can, in some significant ways, enhance the strength of one's case, one's standing with opposing counsel, and one's stature before the court." ABA/ BNA Lawyer's Manual on Professional Conduct, ABA Formal Op. 92–368 at 1001–161 (1993).

### Conclusion

For the foregoing reasons, it is hereby

ORDERED that the relief sought in the Order to Show Cause filed on April 28, 1997 by the proposed intervenors Glens Falls Newspapers, Inc. d/b/a The Post Star and Brendan Lyons is DENIED in all respects; and it is

FURTHER ORDERED that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.