**UNITED STATES of America and The State of Connecticut as parens patriae**

v.

**Carmen E.F. VAZQUEZ, et al.**

**No. 3:95CV1216(AHN).**

United States District Court, D. Connecticut.

Dec. 14, 1998.

86

Jennifer C. Jaff, Assistant Attorney General, Hartford, CT, Sharon E. Jaffe, Assistant U.S. Attorney, Bridgeport, CT, for plaintiffs.

Brian Fahling, American Family Association Law Center Tupelo, MS, for defendants.

## ORDER REGARDING PERMANENT PROTECTIVE ORDER

NEVAS, District Judge.

The plaintiffs, the United States of America and the State of Connecticut as *parens patriae*, brought this action against the defendant, Carmen E.F. Vazquez ("Vazquez"), for allegedly violating the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248 ("FACE"). After a nine-day bench trial, the court found that Vazquez's behavior did not violate FACE.

Vazquez subsequently appealed, in pertinent part, from the court's order sealing a portion of the record and preventing the dissemination of certain videotapes. The Court of Appeals in a remand directed this court to consider whether a permanent order preventing the dissemination of the videotapes should be entered. For the reasons set forth below, a permanent protective order shall not issue.[1]

1. During the course of oral argument, Vazquez's counsel threatened that it would seek appellate review if the court found in the plaintiffs' favor on this issue. Such puerile threats are unprofessional and unpersuasive. Counsel is strongly cautioned to avoid such comments in any future appearances before this or any other court.

## PROCEDURAL BACKGROUND

Prior to the commencement of this action, individuals on both sides of this controversy videotaped encounters between protestors, escorts, and individuals seeking access to the Summit Women's Center ("Summit") in Bridgeport, Connecticut. Many of these videotapes were exchanged between the parties during the course of discovery.

On February 5, 1997, less than a month before the trial was scheduled to commence, the plaintiffs sought a protective order to prevent the public disclosure of the videotapes. On February 27, 1997, the magistrate judge issued an order temporarily sealing all videotapes exchanged by the parties during the course of discovery which depicted patients entering Summit. The court's order also directed the parties to provide further briefing on this issue within thirty days of the date of the order. While the plaintiffs ultimately filed a supplemental brief on March 31, 1997, Vazquez failed to comply with the court's order.

On May 30, 1997, Vazquez filed a notice of appeal contesting the order sealing the videotapes. On May 12, 1998, the Second Circuit remanded this matter for a final decision regarding the sealing of the videotapes. *See United States v. Vazquez,* 145 F.3d 74, 85 (2d Cir.1998). The plaintiffs now represent that the protective order should only govern those videotapes (1) introduced as exhibits at trial and (2) produced to Vazquez by the plaintiffs during the course of discovery. (*See* Pls.' Supplemental Mem. in Supp. of Mot. for Protective Order Regarding Videotapes [hereinafter "Pls.' Supp.Mem."] at 3.)

## STANDARD OF REVIEW

In order to determine whether documents should remain under seal, a court in the Second Circuit must follow the test established in *United States v. Amodeo,* 71 F.3d 1044 (2d Cir.1995). *See Stern v. Trustees of*

Columbia Univ., 131 F.3d 305, 307 (2d Cir. 1997). Under *Amodeo,* the moving party bears the burden of demonstrating that the documents at issue should be sealed. *See DiRussa v. Dean Witter Reynolds, Inc.,* 121 F.3d 818, 826 (2d Cir.1997) (citation omitted), *cert. denied,* — U.S. ——, 118 S.Ct. 695, 139 L.Ed.2d 639 (1998).

The Second Circuit has recognized that judicial records are presumptively subject to public inspection. *See Amodeo,* 71 F.3d at 1047. This does not mean, however, that all documents filed with the court are equally deserving of the full weight of this presumption. *See United States v. Town of Moreau,* 979 F.Supp. 129, 134 (N.D.N.Y.1997), *aff'd sub nom. Town of Moreau v. Glens Falls Newspapers, Inc.,*160 F.3d 853 (2d Cir.1998). Rather, "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo,* 71 F.3d at 1049.

■■■ The presumption of access is particularly strong where the materials at issue play a substantial role in determining a party's substantive rights. *See id.; see also Greater Miami Baseball Club Ltd. Partnership v. Selig,* 955 F.Supp. 37, 39 (S.D.N.Y. 1997) (recognizing that "the presumption is at its strongest when the document in question ... has been submitted as a basis for judicial decision making"). Where the material at issue plays a minimal part in the adjudication process "the weight to be accorded to the presumption of access must be determined by the exercise of judgment [and] ... can be informed in part by tradition." *Amodeo,* 71 F.3d at 1050. After determining the weight of the presumption a document should be afforded, the court "must balance competing considerations against it."[2] *Id.*

2. In *Amodeo,* a non-party news organization sought access to judicial records that had been placed under seal. *See United States v. Amodeo,* 44 F.3d 141, 142 (2d Cir.1995). Because Vazquez is a party to this action and in possession of the videotapes at issue, she maintains that *Amodeo* is not applicable. The court disagrees.

As long as the videotapes were originally received through the discovery process, the mere fact that Vazquez possesses them does not allow her to circumvent the protective order and disseminate the tapes without court approval. Moreover, *Stern,* 131 F.3d at 307, implicitly rejects Vazquez's position that *Amodeo* only applies

## DISCUSSION

The plaintiffs argue that all of the videotapes depicting patients outside of Summit which were introduced as exhibits at trial or produced to Vazquez during the course of discovery should permanently remain under seal. The plaintiffs submit that these tapes may be disseminated where the faces of the patients are obscured.[3] It is the plaintiffs' position that the privacy interests of the patients and the law enforcement concerns of the governments mandate that these materials remain sealed. In opposition, Vazquez maintains that there is no privacy interest in activities occurring in a public forum and that the plaintiffs' law enforcement concerns are baseless. The court agrees with Vazquez and finds that a permanent protective order should not issue.

### I.  Videotapes Introduced as Evidence

#### A.  Presumption of Access

The presumption of public access is "especially strong" where it involves evidence introduced during the course of a trial. *See Amodeo*, 71 F.3d at 1049; *see also United States v. Salerno (In re CBS, Inc.)*, 828 F.2d 958, 960–61 (2d Cir.1987) (recognizing that public had right of access to videotaped deposition of witness played at trial); *United States v. Myers (In re Nat'l Broad. Co.)*, 635 F.2d 945, 952–54 (2d Cir.1980) (allowing television network to copy and televise videotapes entered into evidence during criminal trial). In fact, because "[a]djudication is a formal act of government," material relied upon in performing this task should be available to the public "absent exceptional circumstances." *Joy v. North*, 692 F.2d 880, 893 (2d Cir.1982); *accord F.T.C. v. Standard*

*Fin. Management Corp.*, 830 F.2d 404, 408 (1st Cir.1987) (recognizing that the presumption of access "extends, in the first instance, to 'materials on which a court relies in determining the litigants' substantive rights' ") (citation omitted).

■ Because the videotape exhibits were relied on by this court to assess whether Vazquez violated FACE, these tapes must be afforded the strongest presumption of access. Not only does public access allow for oversight of the judiciary in this instance, but it also provides an avenue for the public to critique the decisions of both state and federal agencies charged with bringing FACE actions. Therefore, the plaintiffs must demonstrate "exceptional circumstances" to overcome this presumption.

#### B.  Countervailing Interests

The plaintiffs contend that these videotapes should remain under seal because: (1) "the plaintiffs have a compelling government interest in continued protection of the privacy rights of patients seeking reproductive health care," and (2) "the governments will be hampered in their attempts to enforce FACE if they are unable to collect and utilize evidence without the threat of repercussions to patients of reproductive health care facilities." (*See* Pls.' Supp.Mem. at 6.) The court shall examine each of these interests in turn.

##### i.  Privacy Interest

"The privacy interests of innocent third parties ... should weigh heavily in a court's balancing equation." *Gardner v. Newsday, Inc. (In re Newsday, Inc.)*, 895 F.2d 74, 79–80 (2d Cir.1990) (citation omitted). "Such interests, while not always fitting comfort-

where a non-party is seeking access to judicial records. There, the plaintiff appealed from a district court's decision granting summary judgment in favor of the defendant. *See Stern*, 131 F.3d at 306. During the course of the litigation the entire record had been placed under seal. *See id.* at 307. The Second Circuit found no basis for sealing the whole record and remanded the matter for the district court to determine whether any specific documents should actually remain under seal. *See id.* The Second Circuit instructed that any "determination should be made in accordance with the test set out in ... *Amodeo." Id.* As such, it is evident that *Amodeo*

still applies even where a party is seeking access to sealed judicial records.

3. At oral argument, the plaintiffs conceded that Vazquez may use unredacted copies of the videotapes at issue should she choose to distribute them to members of Congress. The court is puzzled by this concession. Once the tapes reach a party who is beyond the court's jurisdiction, that party may do with the tapes as he or she pleases. Thus, the tapes could be distributed to media organizations and displayed on national television. Such a concession undermines the necessity for a protective order.

ably under the rubric 'privacy,' are a venerable common law exception to the presumption of access." *Amodeo,* 71 F.3d at 1051. In examining this element, a court should consider whether there is a tradition of privacy in regard to the particular subject matter. *See id.* A court should also weigh the likelihood of injury, if any, that may result if the material does not remain under seal. *See id.*

### a. *Constitutional Right to Privacy*

The plaintiffs argue that the privacy interests at stake in this case concern matters of procreation. *See generally Roe v. Wade,* 410 U.S. 113, 153, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (finding that the constitutional right of privacy "is broad enough to encompass a woman's decision whether or not to terminate her pregnancy"); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (striking down state law forbidding the use of contraceptives because it infringed on the privacy rights of the marital relationship). Specifically, the plaintiffs assert that a woman's right to privacy in seeking an abortion extends to her travel on a public street outside of an abortion clinic. Never before has such a constitutional right been recognized. *See Pro–Choice Network v. Project Rescue,* 799 F.Supp. 1417, 1437 (W.D.N.Y.1992) (stating that "[t]here is no precedent, one way or the other, dealing with the taking of photographs or videotapes of patients entering abortion or family planning clinics, and the constitutional right of privacy" and declining to enjoin the use of cameras outside an abortion clinic), *aff'd in part, rev'd in part on other grounds,* 67 F.3d 359 (2d Cir.1994), *vacated in part on rehearing en banc,* 67 F.3d 377 (2d Cir.1995), *aff'd in part, rev'd in part, Schenck v. Pro–Choice Network,* 519 U.S. 357, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997). Based on the present record, the court declines to expand the boundaries of our constitutional jurisprudence to recognize this privacy interest.

In support of their position, the plaintiffs place undue reliance on an isolated statement made by the Supreme Court in *Thornburgh v. American College of Obstetricians,* 476 U.S. 747, 106 S.Ct. 2169, 90 L.Ed.2d 779

(1986). Specifically, the plaintiffs look to the Court's comment that "[t]he decision to terminate a pregnancy is an intensely private one that must be protected in a way that assures anonymity." *Id.* at 766, 106 S.Ct. 2169, *overruled on other grounds by Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). This statement, however, should not be read apart from the particular facts of *Thornburgh.* There, the Court confronted a statutory scheme that required physicians report to the state:

> [the] identification of the performing and referring physicians and of the facility or agency; information as to the woman's political subdivision and State of residence, age, race, marital status, and number of prior pregnancies; the date of her last menstrual period and the probable gestational age; the basis for any judgment that a medical emergency existed; the basis for any determination of non-viability; and the method of payment for the abortion.

*Thornburgh,* 476 U.S. at 765, 106 S.Ct. 2169. Under the statute, these reports were available to the public for copying purposes. *Id.* at 766, 106 S.Ct. 2169. Because "[i]dentification [was] the obvious purpose of these extreme reporting requirements," the Court concluded that they impermissibly deterred a woman's right to seek an abortion. *Id.* at 767–68, 106 S.Ct. 2169.

■ The court is skeptical of the plaintiffs' position that a constitutional right to privacy exists where a woman seeking an abortion travels on a public street to enter an abortion clinic. Here, however, the court need not reach this issue. The record before this court contains no evidence that the women displayed in these videos were seeking abortions at the time they were captured on videotape. In fact, abortions are only one of many services that Summit provides to its clients. As such, some of the women entering Summit may have been seeking health care services other than abortions. Thus, unlike *Thornburgh,* the nexus between the right to seek an abortion and the right to do so in a private manner is absent in this case.[4]

4. Without deciding the constitutional issue posed

by the plaintiffs, the court believes that if a

The record is also devoid of any evidence that the videotapes were recorded for the purpose of identifying prospective patients of Summit or that any women have in fact been identified. Rather, Vazquez represents that these videos were made solely to document her activities and defend against claims of wrongdoing. This representation has not been rebutted by the plaintiffs. Moreover, Vazquez now seeks to use the tapes not for identification purposes, but to petition the legislative branch for redress of grievances. *See Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir.1988) (recognizing "the right to petition government for redress of grievances as 'among the most precious of the liberties safeguarded by the Bill of Rights' ") (citation omitted); *see also California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (stating that the right to petition for redress applies with equal force to each branch of government). Vazquez's interest in advising Congress of the litigation activities and decisions of the governments as part of her effort to effect statutory change is an important matter.

Finally, the court notes that the element of government intrusion, present in *Thornburgh*, is absent in this case. Unlike the rigid state imposed reporting requirements at issue in *Thornburgh*, here any possible intrusion flows from the activities of private individuals recording what may be viewed by the naked eye in a public forum. This fact further distinguishes the present situation from *Thornburgh*. Thus, the court finds the plaintiffs' reliance on *Thornburgh* misplaced and concludes that no constitutional right to privacy exists in this instance.

### b. *Common Law Right to Privacy*

The fact that a constitutional right of privacy does not protect the patients' actions in this instance does not end our inquiry. A right of privacy could also arise under the common law. Because individuals traditionally have no expectation of privacy in walking down a public street, Vazquez argues that

the plaintiffs cannot demonstrate a countervailing privacy interest requiring that the tapes remain under seal. The court agrees.

Generally, an "individual's right to privacy in the public space is severely limited because [w]herever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public." *Loper v. New York City Police Dep't*, 802 F.Supp. 1029, 1044 n. 21 (S.D.N.Y.1992) (citation and internal quotation marks omitted), *aff'd*, 999 F.2d 699 (2d Cir.1993). Because of this fact, courts have consistently refused to consider the taking of a photograph as an invasion of privacy where it occurs in a public fora. *See Jackson v. Playboy Enter.*, 574 F.Supp. 10, 13 (S.D.Ohio 1983) (finding no invasion of privacy where plaintiffs were photographed "on a city sidewalk in plain view of the public eye"); *Fogel v. Forbes, Inc.*, 500 F.Supp. 1081, 1087 (E.D.Pa.1980) (holding that an invasion of privacy claim failed where the plaintiffs were photographed "at the Miami Airport, a place open to the general public"); *PETA v. Bobby Berosini, Ltd.*, 111 Nev. 615, 895 P.2d 1269, 1281 (Nev.1995) (dismissing invasion of privacy claim where defendant filmed animal trainer while backstage preparing for a live performance); *Cox v. Hatch*, 761 P.2d 556, 564 (Utah 1988) (determining that photograph did not invade plaintiff' privacy where it "was taken in an open place and in a common workplace where there were a number of other people"); *Mark v. KING Broad. Co.*, 27 Wash. App. 344, 618 P.2d 512, 519 (Wash.Ct.App. 1980) (finding no invasion of privacy where news crew filmed the plaintiff and the interior of his pharmacy from the exterior of the building after the plaintiff was accused of Medicaid fraud), *aff'd sub nom. Mark v. Seattle Times*, 96 Wash.2d 473, 635 P.2d 1081 (Wash.1981). Thus, in order for an invasion of privacy to occur, "[t]he invasion or intrusion must be of something which the general public would not be free to view." *Mark*, 618 P.2d at 519.

---

woman's right to an abortion and concomitant right to have an abortion in privacy were extended to protect the image of any and all women entering a clinic where abortions are performed, at a minimum, a showing that the particular

woman in the videotape was or intended to seek an abortion would be a threshold requirement that the party seeking such protection would have to satisfy.

■ Here, the video cameras captured images of potential patients walking on a public street as they entered and exited Summit. Thus, any images filmed by the video camera could also be viewed by members of the general public who were standing or walking in the vicinity of the clinic. Moreover, the videos were made out in the open and during broad daylight. Neither party argues that any ruse or subterfuge was employed to capture the subjects on film. Furthermore, the vicinity of Summit is an area where persons on both sides of the abortion issue exercise their First Amendment rights on a consistent basis. Given these factors, a common law right to privacy does not exist because no one walking in this area could have a legitimate expectation of privacy. *Cf. Fogel,* 500 F.Supp. at 1087 (recognizing that the tort of invasion of privacy "does not apply to matters which occur in a public place or a place otherwise open to the public eye") (citation omitted).

Accordingly, the plaintiffs have not demonstrated a privacy interest sufficient to overcome the presumption of access to the videotape evidence.

### ii. *Law Enforcement Interest*

The plaintiffs also argue that they "will be hampered in their attempts to enforce FACE if they are unable to collect and utilize evidence without the threat of repercussions to patients of reproductive health care facilities." (*See* Pls.' Supp.Mem. at 6 .) On the basis of the present record, the plaintiffs' claimed law enforcement interest is speculative and does not merit the continued sealing of the videotape evidence.

First, the plaintiffs do not explain what "repercussions" the patients may face if the videotape evidence is unsealed. To the extent that the plaintiffs are implying that violence may result, this claim is baseless. While the court recognizes that violence against patients has sometimes been a component of the national abortion controversy, this element has been entirely absent from the present case. Second, the governments have relied on clinic staff and escorts, not patients, for assistance in this FACE action. Thus, there is no factual basis to support plaintiffs' claim that their ability to pursue future actions may be hindered by the unsealing of the videotape evidence. Accordingly, the court finds this asserted interest meritless.

### II. *Videotapes Exchanged During Discovery*

"Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach." *Amodeo,* 71 F.3d at 1050 (citation omitted); *but see In re Agent Orange Prod.Liab.Litig.,* 821 F.2d 139, 146 (2d Cir. 1987) (recognizing that Rules 5(d) and 26(c) of the Federal Rules of Civil Procedure "provide a statutory right of access to . . . discovery materials" that have been filed with the court). In fact, the Supreme Court has recognized that "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); *cf. Anderson v. Cryovac, Inc.,* 805 F.2d 1, 13 (1st Cir.1986) (recognizing "that there is no presumptive first amendment public right of access to documents submitted to a court in connection with discovery motions").

■ Here, the videotapes at issue were received by Vazquez during the course of discovery and have not been filed with the court. The presumption of access to this material is minimal, at best. However, it is still the plaintiffs burden under *Amodeo* to demonstrate that these materials should remain under seal. *See DiRussa,* 121 F.3d at 826 (recognizing that "[t]he burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action"). The plaintiffs have not met this burden. As the court recognized above, the privacy and law enforcement interests raised by the plaintiffs lack any support in the record. Accordingly, the discovery materials received by Vazquez from the plaintiffs should not be subject to an order permanently sealing them.

## CONCLUSION

Based on the foregoing analysis, the video-taped evidence shall no longer remain under seal and the protective order prohibiting the reproduction and dissemination of videotapes exchanged during the course of discovery is no longer in effect.

SO ORDERED.