**UNITED STATES of America,
Petitioner,**

v.

**David A. ACKERT, Respondent,**

v.

**Paramount Communications,
Inc., et al., Intervenors.**

**Misc. A. No. 3:97 MC 83(WIG).**

United States District Court,
D. Connecticut.

Dec. 2, 1999.

John V. Cardone, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for petitioner.

David H. Braff, Sullivan & Cromwell, New York City, for respondent.

Maria T. Vullo, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for intervenors.

## OPINION

GARFINKEL, United States Magistrate Judge.

Petitioner, the United States of America, has moved to release a sealed transcript of an *in camera* interview of Mr. David A. Ackert conducted by this Court. It has also moved to further enforce an IRS summons which is the subject of this action. For the following reasons, petitioner's motion [Doc. # 40] is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Familiarity with the underlying facts is presumed. We set forth only those facts relevant to the resolution of the issue before us.

On August 15, 1997, this Court interviewed Ackert *in camera* for the purpose of electing his recollection of conversations with Eugene I. Meyers, Paramount's senior tax lawyer. The issue was whether the substance of those conversations should be protected by the attorney-client privilege. Ruling in the intervenors' favor, this Court stated, "[b]ased on that *in camera* questioning of Ackert, it is my conclusion that questioning by the government along the lines suggested by government counsel would invade privileged communications, and I would sustain the objection." Hearing Tr. of 8/15/97, at 99. On appeal, the Second Circuit reversed this ruling.

This Court had also ordered enforcement of an IRS summons directed to Ackert. On appeal, the Second Circuit affirmed, stating that it found "no merit in Paramount's cross-appeal from the district court's order enforcing the summons." *United States v. Ackert,* 169 F.3d 136, 140 (2d Cir.1999).

## DISCUSSION

The Second Circuit remanded the case to this Court for further proceedings consistent with its opinion. After several conversations with the parties, this Court ordered the release of Ackert's *in camera* deposition transcript to Paramount's counsel to determine whether the intervenors would object to the release of the transcript to the Government. When the parties were unable to resolve the issue on their own, this Court held a telephonic status conference as a result of which we directed the parties to submit written briefs on the issues of releasing the transcript and continuing enforcement of the IRS summons. This matter is now ripe for our consideration and we address each issue in turn.

### A. Release of the *In Camera* Transcript

█ Petitioner argues that the issue of releasing the transcript of Ackert's *in camera* interview is governed by the presumption favoring public access to judicial documents. *See United States v. Amodeo,* 44 F.3d 141, 146 (2d Cir.1995) (*"Amodeo I "*) (establishing a presumption of access); *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (recognizing a long-standing tradition of allowing the public "to inspect and copy public records and documents, including judicial records and documents"). We agree. As at least one Judge in this District has stated, "to determine whether documents should remain under seal, a court in the Second Circuit must follow" the three-part test established in *Amodeo I* and clarified in *United States v. Amodeo,* 71 F.3d 1044 (2d Cir. 1995) (*"Amodeo II "*). *United States v. Vazquez,* 31 F.Supp.2d 85, 87 (D.Conn. 1998) (Nevas, J.).

█ Throughout this three-step process, the party seeking to maintain judicial records under seal bears the burden of proof, which in this case is the intervenors. *DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818, 826 (2d Cir.1997). Nevertheless, the intervenors argue that the Government must show a compelling reason for unsealing the transcript. In support of its assertion, the intervenors cite *Palmieri v. New*

*York,* 779 F.2d 861, 866 (2d Cir.1985) and *Martindell v. International Telephone and Telegraph Corp.,* 594 F.2d 291, 296 (2d Cir.1979). We do not find these cases applicable to the issue at hand. Both *Palmieri* and *Martindell* involve motions to modify confidentiality and protective orders, respectively. There are no such orders in this case. The intervenors further argue that the cases cited by the Government, including *DiRussa,* are inapposite because they deal solely with motions to seal case materials in the first instance. Yet, the Second Circuit has specifically found that the burden of proof lies with the party opposing the unsealing and release of documents. *Amodeo I,* 44 F.3d at 148; *see Amodeo II,* 71 F.3d at 1047 (confirming that the party seeking to overcome the presumption favoring access bears the burden of proof). Since then, several lower courts have also placed the burden of proof on the party seeking to keep judicial documents under seal. *Vazquez,* 31 F.Supp.2d at 87 (finding that the party seeking to prevent the dissemination of certain videotapes bore the burden of proving they should be permanently protected); *In re Savitt/Adler Litig.,* No. 95–cv–1842, 1997 WL 797511, at *2 (N.D.N.Y. Dec. 23, 1997) (stating that "the party seeking to keep judicial records from public scrutiny bears the burden of demonstrating that they should remain sealed"); *Greater Miami Baseball Club Ltd. Partnership v. Selig,* 955 F.Supp. 37, 40 (S.D.N.Y.1997) (placing the burden of proof "on the party seeking confidentiality protection to establish the need for it" in a case where a nonparty had moved to unseal a deposition transcript).

■ Turning to the test set forth in *Amodeo I* and *Amodeo II,* we must first decide whether the transcript at issue is a "judicial document." *Amodeo I,* 44 F.3d at 145. If it is, the presumption favoring access to judicial records attaches, and the Court must next consider under *Amodeo II* what weight should be given to the presumption of access. 71 F.3d at 1048–50. In the last step of the analysis, the Court must balance countervailing factors against the presumption of access. *Id.* at 1050–51.

The Second Circuit has defined a judicial document as an item which is "relevant to the performance of the judicial function and useful in the judicial process...." *Amodeo I,* 44 F.3d at 145. In this case, we interviewed Ackert to determine whether certain conversations would be protected by the attorney-client privilege. Additionally, the interview was transcribed to create a record for an appeal, if necessary.[1] Because the transcript was used as a basis for deciding the attorney-client privilege issue, we have little hesitation in concluding that it is a judicial document. *See Greater Miami Baseball Club,* 955 F.Supp. at 39 (assuming that a deposition transcript used in connection with a motion to dismiss was a judicial document because it was submitted as a basis for judicial decision-making).

■ Next, we consider the weight which should be given to the presumption favoring access. In *Amodeo II,* the Second Circuit explained that there is no single weight which can be assigned to the presumption of access. Rather, the Second Circuit stated:

> We believe that the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such

---

1. During Ackert's deposition, the intervenors' counsel objected to Ackert being asked about the relevance of using a foreign partner in the proposed transaction between Paramount and Goldman, Sachs. Ackert Dep. of 8/15/97, at 69. The objection was based on attorney-client privilege. *Id.* at 74–75. This Court then asked the parties whether they would agree to having us conduct an *in camera* interview to determine the extent of Ackert's recollection. *Id.* at 79. We explained that the *in camera* interview should be on the record, which would be sealed, "so that there will be a record of what was said *in camera.*" *Id.* at 84.

information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

71 F.3d at 1049. The presumption of access is particularly strong in cases where the materials are introduced at trial or used as a basis for granting summary judgment. On the other hand, the Second Circuit has noted that "[w]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Id.* at 150.

In this case, we find that the presumption is weak. We first note that the decision to conduct the interview of Ackert *in camera* was atypical. We did so expedite the proceedings by handling certain issues as they arose; rather than requiring the parties to interrupt Ackert's deposition in order to file motions to compel or for a protective order. Second, the *in camera* interview has played a negligible role in the parties' dispute. It was created for the sole purpose of deciding the attorney-client privilege issue. Because the Second Circuit held that the attorney-client privilege does not protect Meyer's communications with Ackert, the Government will be able to ask Ackert about his conversations with Meyers. Finally, at the time of Ackert's *in camera* interview, this Court noted that his recollections were of little use. In particular we stated:

I will add that Mr. Ackert's recollections are extremely general, extremely sketchy, and, in any event, would be of virtually no substantive use. And I will add that I find Mr. Ackert to be completely credible with respect to the extent of his recollection. And I believe

he made an honest and candid effort to assist. But the nature of the discussions and the length of time involved really make it impossible for him to specifically recall the kind of information that the government would be seeking.

Ackert Dep. of 8/17/97, at 99–100.

Having decided that the presumption of access is weak, we next turn to any countervailing factors which must be weighed against the presumption. Although the intervenors erroneously argued that the Government bore the burden of proof, we nonetheless are able to identify several countervailing factors raised by the intervenors. First, the intervenors assert that the Government intends to use Ackert's *in camera* deposition to impeach him at the trial in *Nieuw Oranjestad Partnership v. Commissioner,* No. 9791–98 ("*NOP*"), which is scheduled to begin in the Tax Court on February 7, 2000. Indeed, the Government admits as much in its brief. Petitioner's Brief, at 5–6. The intervenors argue that using the transcript in this way is improper because it is an end-run around the Tax Court's discovery rules. For example, they cite Tax Court Rule 74(a) as prohibiting the government from obtaining discovery from a nonparty witness without the consent of the parties. In *NOP,* discovery has concluded without the Government ever having made such a request for consent. Second, the intervenors contend that the information provided by Ackert would not benefit the Government. As support, they cite to several statements made by this Court at the August 15th deposition, such as the statement cited above, suggesting that the transcript would not be helpful.[2]

We agree with the intervenors and find that the relative uselessness of the transcript and the Government's attempt to get what it otherwise could not obtain in Tax Court weigh against the weak presumption favoring access to the transcript.

**2.** In addition to the comment made by this Court, cited *supra* at 225, we stated that "I can assure you that even if my ruling had been different, you would not know more than you know today." Ackert Dep. of 8/15/97, at 113.

Accordingly, we DENY the Government's motion to unseal the transcript of Ackert's *in camera* interview. This denial, however, is without prejudice to a request by the Government for the Court to review the transcript of its examination of Ackert to determine whether there are any inconsistencies between his testimony and his earlier *in camera* examination, or whether there are any areas of inquiry covered *in camera* but not in his testimony before the Government. If the Court finds any inconsistencies or gaps, it would entertain a request to reconsider the denial of access to the transcript.

### B. Continued Enforcement of the IRS Summons

The Government contends that it is entitled to continued enforcement of the IRS summons directed to Ackert, even though the *NOP* matter is a related proceeding which will soon be litigated in Tax Court. In contrast, the intervenors argue that the Government must meet the standard for enforcing a summons at the time enforcement is sought. If we considered the Government's request at this point in time, the intervenors assert that the Government cannot meet its burden. Specifically, the intervenors contend that the summons lacks a legitimate purpose and that the government is seeking evidence that is scarcely relevant.

Unfortunately for the intervenors, it appears that they already raised these issues before the Second Circuit. In its decision, the Second Circuit stated that it found "no merit in Paramount's cross-appeal from the district court's order enforcing the summons." *Ackert*, 169 F.3d at 140. In conclusion, the Second Circuit affirmed the ruling of this Court granting enforcement of the IRS summons. The mandate orders that this Court allow further proceedings in accordance with the Second Circuit's opinion. Consequently, we GRANT the Government's motion to continue enforcement of the IRS summons directed to Ackert. However, we impose certain conditions on the enforcement, suggested by the intervenors and agreed to by the Government. First, the intervenors' counsel may attend any further examination of Mr. Ackert for the purpose of objecting to certain questions on the basis of privilege. Second, any further questioning will be limited to matters that were previously challenged on privilege grounds, and any questions that naturally follow from his responses. But, we reject the intervenors' requests to have any further questioning done by written interrogatories and to mandate that this is the final opportunity for the Government to question Ackert.

### C. Remaining Protections

At the continued examination of Ackert, we anticipate that the intervenors may object to some questions on the grounds of attorney-client privilege and the work product doctrine. At the outset, we note that the Second Circuit rejected a blanket protection of Ackert's conversations with Meyers on the basis of attorney-client privilege. It also rejected the intervenors' argument that the privilege set forth in *United States v. Kovel*, 296 F.2d 918 (2d Cir.1961), applied to this case. The Second Circuit reasoned that Ackert was not acting as a translator or interpreter of client communications. Nevertheless, the Second Circuit left the door open slightly. It stated, "[w]e do not preclude the possibility that, as the examination of Ackert proceeds, Paramount might demonstrate circumstances bringing some particular question or questions put to Ackert within the scope of Paramount's privilege." 169 F.3d at 140. Accordingly, we agree to be available by telephone on the day of the continued examination in order to address any objections based on attorney-client privilege.

Yet, we reject any contention by the intervenors that the work product doctrine protects the communications between Meyers and Ackert. As a threshold matter, the intervenors must show that the material in question—here Ackert's recol-

lection of his conversations with Meyers—was prepared in anticipation of litigation. Fed.R.Civ.P. 26(b)(3); *United States v. Adlman,* 134 F.3d 1194 (2d Cir.1998). There is no question that the conversations took place in connection with a proposed investment, not an impending lawsuit. It does not matter that Ackert's recollections were memorialized as late as 1997, because we find that the time frame in question is when the "material" came into being—namely, when the conversations took place. No litigation was on the horizon in 1989, and indeed the IRS did not begin its audit of the intervenors until 1996. Consequently, we find that the work product doctrine does not apply in this case to the conversations between Ackert and Meyers in 1989.

## CONCLUSION

For the reasons set forth above, we DENY the Government's motion [Doc. # 40–1] to release the transcript of the *in camera* proceeding, and we GRANT its motion [Doc. # 40–2] for continued enforcement of the IRS summons.