## In re AUCTION HOUSES ANTITRUST LITIGATION

No. 00 Civ 0648(LAK).

United States District Court, S.D. New York.

Aug. 21, 2001.

Karen F. Donovan, Intervenor, pro se.

David Bershad, J. Douglas Richards, Michael M. Buchman, Milberg Weiss Ber-

19. To the extent that the Ernst & Young Defendants join DTB's motion for severance, it is likewise denied.

shad Hynes & Lerach LLP, Intervenor, pro se.

Shepard Goldfein, Michael L. Weiner, Clifford H. Aronson, Thomas Pak, Skadden, Arps, Slate, Meagher & Flom LLP, for Defendants Christie's International PLC and Christie's Inc.

Richard J. Davis, Steven A. Reiss, Howard B. Comet, Weil, Gotshal & Manges LLP, for Defendants Sotheby's Holdings, Inc. and Sotheby's, Inc.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This matter is before the Court on an application to unseal the bids submitted by counsel in the course of their competition for the position of lead counsel for the plaintiff class. As the Court concludes that the bids are judicial records presumptively available to the public, that all or most of the circumstances that warranted their sealing no longer exist, and that the grounds advanced in opposition to making them public are insufficiently substantial, the Court grants the application subject to safeguards appropriate to ensuring the protection of any competitively sensitive information obtained from defendants that may be included in the bid documents.

### Facts

As discussed in previous opinions, this Court conducted an auction in the selection of lead counsel for the plaintiff class.[1] Approximately twenty law firms submitted sealed bids in each of two rounds of bidding prior to the selection of lead counsel. The case subsequently has been settled and, although one relatively minor issue is the subject of cross-appeals, this litigation is over to all intents and purposes.[2]

Karen F. Donovan, a non-party, has moved for disclosure of the bids and supporting documents, as she wishes access to the material in connection with a book she is writing.[3] The firm of Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg"), an unsuccessful bidder in the auction, resists disclosure on several grounds. The auction house defendants have no objection to the disclosure of the bid amounts, but assert that they provided confidential information to the plaintiffs' counsel in the course of settlement negotiations pursuant to a confidentiality agreement and are concerned that some of that information may have found itself into bid submissions. Accordingly, they seek an opportunity to review any documents that are to be disclosed in order to raise objections to the presence in them of any competitively sensitive information.

### Discussion

The Court notes at the outset that neither Ms. Donovan nor Milberg is a party to this litigation and that Milberg, although counsel for one or more plaintiffs, is asserting its own interests as a law firm rather than the interests of its clients. Accordingly, one reasonably might question the right of either of them to raise the points they have raised. Nevertheless, no one has objected to their putting forward their respective positions, and it is clear that each claims an interest in the subject matter thus brought before the Court that

1. *See generally In re Auction Houses Antitrust Litig.*, 197 F.R.D. 71 (S.D.N.Y.2000).

2. The remaining issue relates to the scope of the release given by the class to the defendants. Under the terms of the settlement agreement, as amended, however, the finality

of the settlement cannot be affected by the resolution of that issue.

3. Letter from Karen F. Donovan to Judge Kaplan (Aug. 10, 2001); Motion to Unseal Bids at 1.

as a practical matter is protected by no one else. The Court therefore treats each of them as having moved for leave to intervene, Ms. Donovan for the purpose of making her motion and Milberg for the purpose of opposing it, and grants those two motions for those limited purposes.

■ Judicial records presumptively are subject to public inspection.[4] "[T]he presumption is at its strongest when the document in question ... has been submitted as a basis for judicial decision making." [5] Only where countervailing considerations overcome the presumption may the public be denied access to such documents.[6]

■ The bids and supporting documents in this case were submitted as a basis for judicial decision making. The first round of bids and related materials played a role in the Court's decision to modify the structure of the bid formula. The second of course were important in the selection of lead counsel, a matter of vital concern to the class. In consequence, it cannot be gainsaid that the materials are judicial records subject to the presumption of public access.[7]

The strength of the presumption, as indicated, is related to the proximity of the materials at issue to the discharge of the judicial function. While these documents played no role in the adjudication of the merits of this action, it would be a mistake to regard them as bearing only a tenuous relationship to the adjudication of important rights. There is little doubt that the selection of lead counsel had quite an important impact on the rights of the plaintiff class members in at least two respects. First, it established the economic terms on which lead counsel acted on their behalf and thus directly affected the proportion of any eventual recovery that the class members themselves, as distinguished from their counsel, would receive. Second, the Court is persuaded that the particular counsel selected achieved a recovery quite substantially in excess of that which any of the other bidders, including the Interim Lead Counsel, would have achieved. In these circumstances, the manner in which the bidding was conducted and in which the Court evaluated the bids is of great importance to public confidence in the process and to the class members' understandings of the manner in which their interests were protected. The Court therefore concludes that the strength of the presumption of access in this case is toward the robust end of the continuum.

We come then to the arguments Milberg advances for keeping the bids and related materials sealed.

Milberg argues first that the "spirit" of the order inviting bids was "that the bids [would] not be unsealed until this case is over." [8] All too often, lawyers resort to the "spirit" of the law when they recognize that the letter of the law is against them. And this is no exception. The May 17, 2000 order upon which Milberg relies said

---

4. *United States v. Amodeo*, 71 F.3d 1044, 1047 (2d Cir.1995) (*Amodeo II*); *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir.1995) (*Amodeo I*); *Greater Miami Baseball Club L.P. v. Selig*, 955 F.Supp. 37, 39 (S.D.N.Y.1997).

5. *Greater Miami Baseball*, 955 F.Supp. at 39.

6. *Amodeo II*, 71 F.3d at 1050; *Greater Miami Baseball*, 955 F.Supp. at 39.

7. *See United States v. Graham*, 257 F.3d 143, 150 (2d Cir.2001) (presumption not limited to matters received in evidence, but extends to material "relevant to the performance of the judicial function and useful in the judicial process" (quoting *Amodeo I*, 44 F.3d at 145)).

8. Memorandum of Law of Milberg Weiss Bershad Hynes & Lerach LLP in Opposition to the Motion to Unseal Bids at 2 ("Milberg Mem.").

that the "Court does not intend to disclose any bids prior to the earlier of (a) final adjudication of this action, or (b) notice to the class of a proposed settlement." [9] The letter of the order has been satisfied—notice of the proposed settlement was given to the class long ago. And so too the spirit. The principal point of retaining the bids and associated materials under seal was to deprive the defendants of knowledge of lead counsel's fee arrangement lest it affect the settlement calculus. But the case has been settled and lead counsel's fee arrangement is public knowledge. The primary purpose of sealing the bids has been served.

Milberg's second point is the contention that access to the bids and bidding methodologies of the unsuccessful bidders might "give other plaintiffs' firms an unfair competitive advantage in subsequent antitrust cases where the lead counsel position is assigned pursuant to auction." [10] Perhaps. But the likelihood that knowledge of the particulars of an unsuccessful bid in case no. 1 would give other bidders in case no. 2 a competitive advantage seems quite speculative. Certainly Milberg has not shown how such information could be of use. And it is significant to note that none of the other unsuccessful bidders has raised any concern with public disclosure of the bids.

Milberg's final argument is that revelation of the bids and bid documents here would lead plaintiffs' firms to be less forthcoming in future auctions for the selection of lead counsel. [11] Again, perhaps so. But if the purpose of submitting a bid in a lead counsel auction is to gain the representation, it is hard to see why the press of competition in a future auction would not provide sufficient incentive for each bidder to put its best foot forward by making the best and best supported bid of which it is capable.

In the last analysis, Milberg has advanced no persuasive reason for retaining the bids under seal. Indeed, its showing is so weak that the strength of the presumption of public access in this case is not material to the resolution of this motion. Ms. Donovan's interests in obtaining the materials for the stated purposes would outweigh Milberg's interest in keeping them confidential even if there were no presumption at all.

The auction houses, on the other hand, have raised a more substantial concern. After the appointment of Interim Lead Counsel and before the selection of the lead counsel who ultimately litigated and settled the case, Christie's and Sotheby's embarked upon settlement negotiations with Interim Lead Counsel. In the course of those discussions, each of them separately provided confidential business information, including non-public financial statements and customer data, to Interim Lead Counsel pursuant to a strict confidentiality agreement. Each asserts that some of this information could result in competitive harm if it came to the attention of the other or of other competitors. Both fear that some of this information may be reflected in the materials supporting bids by individual plaintiffs' firms.

Ultimately, the burden will be on Christie's and Sotheby's to show that any confidential information that has found its way into the bid documents should be kept under seal. At the moment, however, they do not know what, if any, such information is in the bid documents and thus cannot sustain that burden. They are entitled to

---

9.   Order, May 17, 2000 at 2.

10.   Milberg Mem. at 2.

11.   *Id.* at 3.

an opportunity to see what is there before it becomes public and to make any application they deem appropriate.

### Conclusion

Ms. Donovan's motion is granted to the following extent. Outside counsel for Christie's and Sotheby's, but no one else, may inspect the bids and bid documents [12] currently held under seal by the Clerk between now and September 4, 2001. In the event Christie's or Sotheby's moves to continue the seal as to any or all of the sealed documents on or before September 7, 2001, the bids and bid documents shall be retained under seal pending further order of the Court. In the event neither moves to continue the seal on or before that date, the bids and bid documents shall be placed on the public record on September 10, 2001.

SO ORDERED.

---

**12.** This opinion applies to the sealed documents items 52, 57, 73, 74, 124, and 126–165.