## In re NYSE SPECIALISTS SECURITIES LITIGATION.

### No. 03 Civ. 8264RWS.

United States District Court,
S.D. New York.

Feb. 26, 2007.

See, also, 2006 WL 1704447.

Becker Meisel LLC, By: Martin L. Borosko, James M. McCarrick, Michael E. Holzapfel, Daniel L. Pascoe, Livingston, NJ, for Sea Carriers Corporation.

Lovell Stewart Halebian LLP, By: Christopher Lovell, Victor E. Stewart, Gary S. Jacobson, Imtiaz Siddiqui, James M. Bekier, New York, NY, Co–Lead Counsel for Co–Lead Plaintiff Empire Programs, Inc.

Lerach Coughlin Stoia Geller Rudman & Robbins LLP, By: William S. Lerach, Mark Solomon, Byron S. Georgiou, William J. Doyle II, David W. Mitchell, Lucas F. Olts, Brian O. O'Mara, Eric I. Niehaus, San Diego, CA, Co–Lead Counsel for Co–Lead Plaintiff CalPERS.

## OPINION

SWEET, District Judge.

Purported plaintiff class member Sea Carriers Corporation ("Sea Carriers") has moved to: (1) "decertify" Empire Programs, Inc. of New Jersey ("Empire NJ") as co-lead plaintiff in this consolidated class action; (2) add Sea Carriers as a named plaintiff and certify Sea Carriers to replace Empire NJ as co-lead plaintiff; and (3) approve Sea Carriers' election of Becker Meisel as co-lead plaintiff's counsel. Party plaintiff Robert A. Martin ("Martin") has moved for an order appointing him co-lead plaintiff to any extent that Empire NJ does not continue as co-lead plaintiff. For the reasons set forth below, Sea Carriers' motion is granted in part, and denied in part and Martin's motion is denied.

### Prior Proceedings

This is a consolidated securities fraud class action brought on behalf of a purported class of investors who have claimed that they sustained losses due to a fraudulent scheme perpetrated by Defendants, specialist firms on the New York Stock Exchange ("Specialist Defendants")[1] and the New York Stock Exchange ("NYSE") itself, in violation of, *inter alia*, Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. The action was initiated on October 17, 2003, by Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust ("Pirelli"), which filed a complaint on behalf of itself and all others similarly situated (03 Civ. 8264). Additional complaints were subsequently filed by Lawrence Marcus on October 27, 2003 (03 Civ. 8521), Empire NJ on November 11, 2003 (03 Civ. 8935), and the California Public Employees' Retirement System ("CalPERS") on December 16, 2003 (03 Civ. 9968). On March 16, 2004, Rosenbaum Partners, LP filed a complaint in its individual capacity (04 Civ. 2038).

Several entities and individuals also moved for appointment as lead plaintiffs of a purported class of persons or entities who purchased or sold Specialist Defendants' clients' stocks either between October 17, 1998, and October 15 2003 (the "proposed class period"), or during a portion of that same time, from January 1, 2000, through December 31, 2002 (the "alternate proposed class period").[2] Among such movants were Empire NJ and Sea Carriers LP I,[3] both of which moved for appointment as lead plaintiff and for appointment of lead counsel on December 16, 2003. CalPERS also similarly moved.

By an opinion dated May 27, 2004, the above-referenced actions were consolidated for all purposes under Docket Number 03 Civ. 8264. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 401–02 (S.D.N.Y. 2004) ("*Pirelli*"). CalPERS and Empire NJ were appointed co-lead plaintiffs, and lead

---

1. The Specialist Defendants named in one or more of the various complaints are LaBranche & Co., Inc., LaBranche & Co., LLC, Michael LaBranche, and George M.L. LaBranche, IV; Bear Wagner Specialists LLC; Spear, Leeds & Kellogg Specialists LLC and Spear, Leeds & Kellogg LP; the Goldman Sachs Group, Inc.; Van Der Moolen Specialists USA, LLC and Van Der Moolen Holdings N.V.; FleetBoston Financial Corporation and Fleet Specialist, Inc.; Performance Specialist Group, LLC; and Susquehanna Specialists, Inc. and Susquehanna International Group, LLP.

2. The complaint filed by Empire NJ was the only complaint to adopt the alternate proposed class period. *Pirelli*, 229 F.R.D. at 400 n. 4.

3. It was Sea Carriers LP I, a limited partnership firm trading in equity securities, and not Sea Carriers Corporation, the movant herein, that originally moved in December 2003 for appointment as lead plaintiff and for approval of its choice of lead counsel in this action. In support of its motion, Sea Carriers LP I claimed to have traded approximately 1.3 billion shares during calendar year 2003, with a total dollar value of such trades amounting to approximately $59.9 billion. *See Pirelli*, 229 F.R.D. at 400.

counsel was selected. *Id.* at 402–21. A Consolidated Complaint (the "Complaint") was filed on September 17, 2004.

On November 16, 2004, the Specialist Defendants moved to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6), Fed. R.Civ.P. On November 17, 2004, the NYSE moved to dismiss the Complaint, also pursuant to Rule 12(b)(6), Fed.R.Civ.P. In a memorandum and opinion dated December 13, 2005, the Complaint was dismissed with prejudice in its entirety as to the NYSE. *In re NYSE Specialists Sec. Litig.*, 405 F.Supp.2d 281, 302–08 (S.D.N.Y.2005). The state law claims against all the Defendants, the Section 20(a) claim as to Susquehanna, and the Section 10(b) manipulative scheme claim as to all the Affiliated Companies,[4] with the exceptions of LaBranche & Co. and Van der Moolen Holding, were also dismissed. *Id.* at 308–21. Finally, a motion filed by Plaintiffs on October 1, 2004, and marked as fully submitted on November 17, 2004, to modify the Private Securities Litigation Reform Act ("PSLRA") discovery stay was denied as moot. *Id.* at 287, 320–21.

Based on the final determination of the claims against the NYSE, on January 12, 2006, the Co–Lead Plaintiffs moved for an order granting certification and entry of final judgment pursuant to Rule 54(b), Fed. R.Civ.P. A clerk's judgment was entered on February 17, 2006.

An order was signed on January 24, 2006, permitting the Co–Lead Plaintiffs to file an amended complaint adding Martin as party plaintiff. The Amended Consolidated Complaint (the "Amended Complaint") was filed on February 2, 2006.

On March 3, 2006, Sea Carriers filed a motion for an order to: (1) "decertify" Empire NJ as co-lead plaintiff in this consolidated class action;[5] (2) add Sea Carriers as a named plaintiff and "certify" Sea Carriers to replace Empire NJ as co-lead plaintiff; and (3) approve Sea Carriers' election of Becker

Meisel as co-lead plaintiff's counsel. This motion was heard and marked fully submitted on April 26, 2006. On August 14, 2006, Martin similarly moved for an order appointing him as co-lead plaintiff to any extent that Empire NJ does not continue as co-lead plaintiff. This motion was heard and marked fully submitted on October 4, 2006.

### The Parties

CalPERS is the largest public employee retirement system in the United States, with assets of over $166 billion and nearly 1.4 million beneficiaries, including active and retired public employees. CalPERS is alleged to have purchased and/or sold almost three billion shares of NYSE-listed stock between October 17, 1998 and October 15, 2003 (the "Class Period").

Empire NJ is a New Jersey corporation that has its principal place of business in Saddle River, New Jersey. Empire NJ was alleged to have purchased and/or sold over four billion shares of NYSE-listed stock during the Class Period.

Martin, a citizen of the state of New Jersey, is owner and president of Empire NJ. Martin has also conducted business as Empire Programs, Inc. ("Empire DE"), an entity incorporated in Delaware in 1976 but since dissolved.

Sea Carriers, a Delaware corporation, was founded by Per G. Barre. Sea Carriers has its principal place of business in Connecticut.

### Discussion

**1. Sea Carriers' Motion to Disqualify and Remove Empire NJ As Co–Lead Plaintiff**

**a. There Is No Procedural Bar to the Sea Carriers' Motion**

Martin and Empire NJ have asserted several procedural bars to Sea Carriers' motion. (Martin/Empire Br. in Opp'n 7–8, 10, 22–24.) However, none of Martin and Empire NJ's

---

**4.** LaBranche & Co., Spear Leeds LP, Goldman Sachs & Co., the Goldman Sachs Group, Van der Moolen Holding, FleetBoston Corp., Bank of America, Quick & Reilly, Bear Stearns & Co., SIG LLP, and Susquehanna are referred to collectively as the "Affiliated Companies." *In re*

*NYSE Specialists Sec. Litig.*, 405 F.Supp.2d at 287 n. 1.

**5.** The motion will hereinafter be referred to as a motion to disqualify and remove co-lead plaintiff Empire NJ, rather than to "decertify."

arguments in this regard can successfully dispose of the motion to disqualify and remove Empire NJ as co-lead plaintiff.

### i. Sea Carriers Has Standing and Need Not Seek Leave to Intervene On Its Motion to Disqualify and Remove Empire NJ As Co–Lead Plaintiff

■ First, Martin and Empire NJ have argued that Sea Carriers has no standing to bring this motion due to Sea Carriers' prior unsuccessful motion to be appointed lead plaintiff in this action. (*Id.* at 10.) Martin and Empire NJ have further asserted that Sea Carriers may not be heard on its motion because it is a non-party and has failed to seek or obtain leave of the Court to intervene pursuant to Rule 24, Fed.R.Civ.P. (*Id.*) As a purported plaintiff class member, however, Congress has granted Sea Carriers the standing to challenge Empire NJ's lead plaintiff status.

The Private Securities Litigation Reform Act (the "PSLRA") sets forth the procedure governing the appointment of lead plaintiffs in securities class actions. *See generally* 15 U.S.C. § 78u–4. As part of this procedure, the PSLRA specifically authorizes purported class members to move the Court to serve as lead plaintiff, requires the Court to consider such motions whether or not the movant is a named plaintiff in the action, and even authorizes the appointment of non-named plaintiffs as lead plaintiff:

> [T]he court shall consider any motion made by a purported class member ..., including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members

of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members. . . .

*Id.* § 78u–4(a)(3)(B)(i). In addition, the PSLRA establishes a statutory presumption as to the most adequate lead plaintiff which "may be rebutted only upon proof *by a member of the purported plaintiff class* . . . ." *Id.* § 78u–4(a)(3)(B)(iii)(II) (emphasis added).

It is therefore presumed that a purported plaintiff class member such as Sea Carriers has standing and need not seek leave to intervene pursuant to Rule 24 in order to challenge the adequacy of a lead plaintiff appointed under the PSLRA.[6]

### ii. The Court May Consider Sea Carriers' Motion to Disqualify and Remove Empire NJ As Co–Lead Plaintiff

■ Next, Martin and Empire NJ have argued that Sea Carriers' motion to disqualify and remove Empire NJ as co-lead plaintiff is an untimely motion for reconsideration[7] and, alternatively, is not authorized under the PSLRA, 15 U.S.C. § 78u–4, or Rule 23, Fed.R.Civ.P. (Martin/Empire Br. in Opp'n 7–8, 22–24.) However, based on Congressional intent in passing the PSLRA and establishing the requirement of appointing a lead plaintiff, courts have considered a variety of lead plaintiff related motions despite lack of explicit authority under the PSLRA or Rule 23.

In 1995, Congress enacted the PSLRA to address perceived abuses in securities fraud class actions. *See* S.Rep. No. 104–98 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679;

---

**6.** Martin and Empire preemptively objected to a Rule 24 motion by Sea Carriers on the ground that such a motion would cause delay and prejudice to existing parties to the litigation, thereby rendering the motion untimely. (Martin/Empire Br. in Opp'n App.) In "an abundance of precaution," however, Sea Carriers moved to intervene in its reply brief. (Sea Carriers Reply Br. 10.) Having determined that formal intervention is not necessary for Sea Carriers to challenge the adequacy of a lead plaintiff, in the alternative, a motion to intervene for that limited purpose would not be denied as untimely. *See Farmland Dairies v. Comm'r of N.Y. Dep't of Agric. & Mkts.,* 847 F.2d 1038, 1044 (2d Cir.1988) (outlining

factors for evaluating timeliness of a motion to intervene); *see also, e.g., In re Auction Houses Antitrust Litig.,* 158 F.Supp.2d 364, 366 (S.D.N.Y.2001) (granting motions to intervene for limited purposes of making and opposing a motion); *In re NASDAQ Market–Makers Antitrust Litig.,* 164 F.R.D. 346, 351 (S.D.N.Y.1996) (granting motion to intervene for limited purpose of making other motions).

**7.** Under Local Civil Rule 6.3, a motion to reconsider must be served within ten days of entry of the order.

H.R.Rep. No. 104–369 (1995) (Conf.Rep.), *as reprinted in* 1995 U.S.C.C.A.N. 730. Specifically, the PSLRA was intended to prevent "lawyer-driven" litigation, and to ensure that parties with significant financial interests in the litigation "will participate in the litigation and exercise control over the selection and actions of plaintiffs counsel." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 43–44 (S.D.N.Y.1998) ("*In re Oxford Health Plans I*") (quoting 1995 U.S.C.C.A.N. at 731); *accord In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y.2002) ("*In re IPO I*"); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157–58 (S.D.N.Y.1997). Accordingly, the PSLRA amended the Exchange Act by, among other things, setting forth a procedure for court appointment of lead plaintiffs in securities class actions. *See generally* 15 U.S.C. § 78u–4(a)(3)(B).

Courts have interpreted their lead plaintiff responsibilities under the PSLRA to encompass a continuing "duty to monitor whether lead plaintiffs are capable of adequately protecting the interests of the class members." *In re Terayon Commc'ns Sys., Inc. Sec. Litig.*, No. C 00–01967 MHP, 2004 WL 413277, at *7 (N.D.Cal. Feb. 23, 2004) (finding lead plaintiffs no longer appropriate on defendants' motion to disqualify). To carry out this duty, courts have established procedures to address various lead plaintiff issues not specifically addressed in the statute. For example, acknowledging that "[t]he PSLRA is entirely silent on the proper procedure for substituting a new lead plaintiff when the previously certified one withdraws," the Honorable Shira Scheindlin developed and adopted a standard for deciding such a motion in *In re IPO Securities Litigation*, 214 F.R.D. at 120–21. In *In re Xerox Securities Litigation*, the court also devised a procedure for addressing a motion for substitution of lead plaintiff. Civil No. 3:9CV2374 (AWT), 2006 WL 1359339, at *1 (D.Conn. May 12, 2006).

In another example, the court in *In re Oxford Health Plans, Inc. Securities Litigation* acknowledged that "the statute does not provide for any specific action by the Court should it turn out after a Lead Plaintiff has been appointed[ ] that Lead Plaintiff should on further examination fail to meet all of the requirements of Rule 23, or simply withdraw his or her expression of willingness to serve as Class Representative...." 191 F.R.D. 369, 379 (S.D.N.Y.2000) ("*In re Oxford Health Plans II*") (addressing the withdrawal of the proposed class representative for one of three co-lead plaintiff groups). The court went on to deny a motion to appoint a substitute lead plaintiff in favor of permitting other members of the co-lead plaintiff group to submit written notice of their willingness to act as class representative. *Id.* at 380–81.

Perhaps most similar to the Sea Carriers' motion is the motion to disqualify lead plaintiffs considered in *In re Terayon Communications Systems, Inc. Securities Litigation*, 2004 WL 413277. Based on material presented by defendants regarding the lead plaintiffs' fitness, the *In re Terayon* court granted the defendants' motion to disqualify the court-appointed lead plaintiffs even after the class had been certified. *Id.* at *7–8.

Overall, courts have considered or acknowledged the ability to consider motions to disqualify, remove, withdraw, substitute, and add lead plaintiffs throughout the litigation of a securities class action. *See, e.g., In re Am. Serv. Group, Inc.*, No. 3:06–00323, 3:06–337, 3:06–341, 3:06–443, 2006 WL 2503648, at *4 (M.D.Tenn. Aug. 29, 2006) ("any plaintiff may move the Court for reconsideration of this appointment of the lead plaintiff"); *In re Xerox Sec. Litig.*, 2006 WL 1359339, at *1 (considering motion to add or substitute lead plaintiffs); *In re Flight Safety Techs., Inc. Sec. Litig.*, 231 F.R.D. 124, 131 n. 6 (D.Conn. 2005) (acknowledging ability to entertain a motion to remove lead plaintiff); *In re Initial Pub. Offering Sec. Litig.*, 224 F.R.D. 550 (S.D.N.Y.2004) ("*In re IPO II*") (considering motions to withdraw, substitute, and add lead plaintiffs); *In re Terayon*, 2004 WL 413277 (considering motion to disqualify lead plaintiffs); *In re IPO I*, 214 F.R.D. at 120–21 (establishing standard for deciding a motion for appointment of substitute lead plaintiffs); *In re Oxford Health Plans II*, 191 F.R.D. at 380–81 (considering motion to substitute lead plaintiff).

In their attempt to bar Sea Carriers' motion as an unauthorized motion under the

PSLRA and Rule 23, Martin and Empire NJ further argue that such a motion may only be made by the existing lead plaintiffs and not by "unsuccessful lead plaintiffs," such as Sea Carriers. (Martin/Empire Br. in Opp'n 24.) In support of this argument, Martin and Empire NJ point to *In re IPO I*, 214 F.R.D. at 119, which they describe as involving motions by court-appointed lead plaintiffs to be withdrawn and to have new lead plaintiffs substituted in their place in order to, according to Martin and Empire NJ, "clarify potential pleading issues ... prior to motions for class certification." (Martin/Empire Br. in Opp'n 24.) [8]

It is certainly within the lead plaintiffs' discretion and, perhaps more importantly, part of a lead plaintiff's responsibility to propose their own withdrawal and substitution should it be discovered that they may no longer adequately represent the interests of the purported plaintiff class. *See, e.g., In re Initial Pub. Offering Sec. Litig.,* No. 21 MC 92SAS, 01 Civ. 9741, 01 Civ. 10899, 2004 WL 3015304, at *1 (S.D.N.Y. Dec. 27, 2004) *("In re IPO III")* (granting motion by lead plaintiff to withdraw once it was determined that he had not purchased shares during the alleged class period); *In re IPO II,* 224 F.R.D. at 555 (granting motion by plaintiffs to amend the pleadings to correct the appointment of the wrong lead plaintiffs). If, however, as is the case here, the lead plaintiff should fail to make such a motion, a member of the purported class will be allowed to endeavor to protect its own interests and the interests of its fellow class members by similarly moving the court to have a lead plaintiff removed upon good cause shown.

Based on the overarching purpose of the PSLRA to ensure the active participation of interested parties in the litigation, the court's duty to continuously monitor lead plaintiffs' adequacy, and the preceding caselaw, it is within the Court's discretion and responsibility to consider a motion to disqualify and remove a lead plaintiff appointed by the Court, despite a lack of explicit authorization under the PSLRA or Rule 23, Fed.R.Civ.P.

### iii. *Sea Carriers' Motion to Disqualify or Remove Empire NJ As Co-Lead Plaintiff Is Not Premature*

 While it has been established that a motion to disqualify and remove an appointed lead plaintiff may be considered by the Court, there remains a question of timing. Specifically, Martin and Empire NJ have argued that Sea Carriers' motion is premature and that a challenge to Empire NJ's ability to adequately represent the purported plaintiff class may only be properly considered upon a motion to certify the class. (Martin/Empire Br. in Opp'n 23–24.) However, nowhere in the statute or the existing caselaw is consideration of a motion to disqualify and remove an appointed lead plaintiff limited in this manner. In fact, many courts have reserved the right to revisit the appointment of lead plaintiffs as needed.

When Congress passed the PSLRA, it effectively established a two-step approach to bringing a securities class action: (1) appointment of lead plaintiff(s) and lead counsel pursuant to the PSLRA; and (2) certification of the class, including the class representatives, pursuant to Rule 23, Fed.R.Civ.P. *See, e.g., In re WorldCom, Inc. Sec. Litig.,* 219 F.R.D. 267, 286 (S.D.N.Y.2003) ("Appointment of a lead plaintiff and certification of the class occur at two different stages of the litigation...."); *In re IPO I,* 214 F.R.D. at 123 ("The purpose of the lead plaintiff section of the PSLRA was never to do away with the notion of class representatives or named plaintiffs in securities class actions."); *In re Indep. Energy Holdings PLC Sec. Litig.,* 210 F.R.D. 476, 485 (S.D.N.Y.2002) ("the appointment of lead plaintiff is not synonymous with the designation of class representatives"); *In re Oxford Health Plans II,* 191 F.R.D. at 378 ("being a Lead Plaintiff under the PSLRA is not the same as being a Class Representative under Rule 23"). Therefore, this two-step process may provide two distinct opportunities for challenging the qualifications of the lead plaintiff: first, challenging the appli-

---

**8.** Nowhere in the court's opinion is it indicated that this was the purpose of the lead plaintiff substitutions. Rather, the lead plaintiffs sought to join new plaintiffs for this purpose. The lead plaintiff substitutions were made to replace appointed lead plaintiffs who had chosen to withdraw for unspecified reasons. *See generally In re IPO I,* 214 F.R.D. 117.

cant's qualifications for appointment as lead plaintiff; and second, challenging the court-appointed lead plaintiff's qualifications for certification as class representative should the lead plaintiff seek appointment as class representative. *See, e.g., Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir.2004) (" '[t]he provisions of the bill relating to the appointment of lead plaintiff are not intended to affect current law with regard to challenges to the adequacy of the class representative' ") (quoting H.R.Rep. No. 104–369, at 34, *as reprinted in* 1995 U.S.C.C.A.N. at 733); *Z–Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218–19 (9th Cir.2000) ("It is not inconceivable that a lead plaintiff appointed originally might turn out to be an inadequate class representative...."); *In re Oxford Health Plans II*, 191 F.R.D. at 373, 379 ("the appointment of lead plaintiffs occurring as it does in advance of class discovery, is not a final ruling on their appropriateness as Class Representatives").[9]

However, nothing in the statute limits the time at which a court may reconsider a lead plaintiff's ability to adequately represent the interests of the purported class, separate and apart from consideration of the same lead plaintiff's qualifications to serve as class representative. In fact, as already discussed, the statute does not address reconsideration of a lead plaintiff's appointment by the court whatsoever. *See supra.* Therefore, the PSLRA also does not limit the time period during which the court may consider such a motion to disqualify and remove a lead plaintiff.

Furthermore, courts have acknowledged that a motion to remove a lead plaintiff may be entertained without specifying any time limitation on the consideration of such motions. *See, e.g., In re Flight Safety Tech.,*

*Inc.*, 231 F.R.D. at 131 n. 6 (citing *In re Terayon*, 2004 WL 413277) ("A motion to remove a lead plaintiff may be entertained at a later date, however, if information concerning any of the lead plaintiffs reveals that he is no longer fit to serve in such capacity."). For example, the *In re Terayon* court considered a motion to remove lead plaintiffs as timely even after class certification, reasoning that "the court has a continuing responsibility to determine whether lead plaintiffs meet the typicality and adequacy prongs of Rule 23 such that the interests of the class are protected." 2004 WL 413277, at *7 (citing *Z–Seven Fund, Inc.*, 231 F.3d at 1218–19).

Many courts, including this one, have reserved the right to revisit lead plaintiff appointments at any time the need arises. *See, e.g., In re Peregrine Sys., Inc. Sec. Litig.*, No. Civ. 02 CV 870–J(RBB), 2002 WL 32769239, at *16 (S.D.Cal. Oct. 11, 2002) ("the court may revisit the issue of whether co-lead plaintiffs are warranted in this case if there is good cause to do so"); *In re Baan Co. Sec. Litig.*, No. 1:98CV2465 (ESH), 2002 WL 32307825, at *4 (D.D.C. July 19, 2002) (*"In re Baan II"*) ("If at any point the Court finds that lead plaintiffs or their counsel are not fulfilling the requirements of the PSLRA, it will not hesitate to revisit its rulings on the adequacy of the lead plaintiffs or their counsel."); *Borenstein v. Finova Group, Inc.*, No. Civ. 00–619PHXSMM, Civ. 00–926PHXPGR, Civ. 00–978PHXSMM, Civ. 00–1010PHXEHC, Civ. 00–1100PHXROS, 2000 WL 34524743, at *9 (D.Ariz. Aug. 30, 2000) ("the Court may also reopen the issue of lead Plaintiff"); *In re Oxford Health Plans I*, 182 F.R.D. at 51 ("[t]he Court reserves the right to alter this [lead plaintiff] structure at any

---

**9.** The qualifications for court appointment as lead plaintiff and class representative differ. First, having the largest financial interest in the action is only a factor for appointment as lead plaintiff and not as class representative. *See generally* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb); Fed.R.Civ.P. 23; *see also In re Oxford Health Plans II*, 191 F.R.D. at 375 ("there is no requirement in Rule 23 concerning the amount of loss ... necessary to qualify as a class representative"). Second, courts have concluded that although lead plaintiffs must meet the requirements of Rule 23, "[t]he Rule 23 analysis for

purposes of appointing a lead plaintiff is significantly less detailed than the Rule otherwise requires. '... one need only make a "preliminary showing" that the Rule's typicality and adequacy requirements have been satisfied.' " *In re IPO I*, 214 F.R.D. at 121 (quoting *In re Crayfish Co. Sec. Litig.*, No. 00 Civ. 6766, 2002 WL 1268013, at *4 (S.D.N.Y. June 6, 2002)); *accord Fishbury, Ltd. v. Connetics Corp.*, No. 06 Civ. 11496(SWK), 2006 WL 3711566, at *2 (S.D.N.Y. Dec. 14, 2006); *In re Flight Safety Techs.*, 231 F.R.D. at 128; *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252–53 (S.D.N.Y.2003).

time and for any reason"); *cf. Z–Seven Fund, Inc.*, 231 F.3d at 1218 ("Nothing in the statutory language requires a specific reservation before a lead plaintiff designation can be re-opened."); *In re Baan Co. Sec. Litig.*, 271 F.Supp.2d 3, 6 (D.D.C.2002) (*"In re Baan I"*) ("The court is also empowered to review these [lead plaintiff] appointments *sua sponte.*" (citing *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F.Supp.2d 401, 410 (S.D.Tex.2000); *Takeda v. Turbodyne Techs., Inc.*, 67 F.Supp.2d 1129, 1138 (C.D.Cal.1999))).

It has already been indicated that the lead plaintiff appointments in this action may be revisited as needed:

> [O]ver the course of this litigation, information may come to light or other reasons develop indicating the need to revisit the lead-plaintiff designation reached here. Should circumstances evolve in such a manner, the decision reached here regarding appointment of lead plaintiff and lead counsel may be re-opened.

*Pirelli*, 229 F.R.D. at 408. Accordingly, under the instant circumstances, the Court will consider as timely the motion to disqualify or remove Empire NJ as co-lead plaintiff.

### b. *Empire NJ Did Not Have the Requisite Financial Interest to Be Appointed Lead Plaintiff*

■ Having determined that the Sea Carriers motion to disqualify and remove Empire NJ as co-lead plaintiff is a valid and timely motion, the motion will now be considered. Since it has been revealed that the prior determination regarding Empire NJ's satisfaction of the PSLRA's financial interest requirement, 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb), was in error, the motion to disqualify and remove Empire NJ as co-lead plaintiff is granted.

The PSLRA provides that a court shall consider any motion made by a purported class member and shall appoint as lead plaintiff(s) the member or members of that purported class that the court determines to be most capable of adequately representing the interests of the class members. *Id.* § 78u–4(3)(B)(i). Regarding the determination of "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u–4(a)(3)(B)(iii)(I); *see also, e.g., Weinberg*, 216 F.R.D. at 252; *Albert Fadem Trust v. Citigroup, Inc.*, 239 F.Supp.2d 344, 347 (S.D.N.Y.2002).

In accordance with the requirements of the PSLRA, Empire NJ timely moved on December 16, 2003, to be appointed as lead plaintiff. *Pirelli*, 229 F.R.D. at 403; *see also* 15 U.S.C. §§ 78u–4(a)(3)(A)(i)(II) & (a)(3)(B). In its moving papers, Empire NJ certified that "[d]uring the Class Period[,] Empire engaged in transactions involving purchases and sales of billions of shares [of] securities in transactions executed by the defendants." (Certification of Empire Programs, Inc. by R. Allan Martin, Dec. 16, 2003, ¶ 4.) Empire NJ further claimed to have traded over 4.5 billion shares of NYSE stocks via Super-DOT [10] during the proposed class period and submitted its trading records from September 1998 through November 2003 in support of this claim. *Pirelli*, 229 F.R.D. at 409. The trades were made through an account with Spear, Leeds & Kellogg (the "SLK account"), one of the Specialist Defendants. Based on Empire NJ's moving papers, Empire NJ was deemed "to have the largest financial interest in market orders placed over SuperDOT" and was therefore jointly appointed as co-lead plaintiff with CalPERS. *Id.* at 411, 420.

Sea Carriers now argues that, contrary to the assertions made by Empire NJ in sup-

---

**10.** The NYSE's electronic order entry system is known as the Super Designated Order Turn-

around System, or "SuperDOT."

port of its motion for appointment as lead plaintiff, "Empire New Jersey did not exist for most of the subject time period … It had no recognizable legal interest in the SLK account through which all the subject trades were made" and therefore "no financial interest in this case...." (Sea Carriers Br. in Supp. 8–9.) In support of its argument, Sea Carriers has submitted a copy of the Certificate of Incorporation for Empire Programs, Inc., which was signed on January 31, 2002, and filed in the Office of the Treasurer of the State of New Jersey on February 1, 2002, more than three years into the proposed class period.[11] (McCarrick Decl., Feb. 28, 2006 ("McCarrick Decl.") App. 1.0, Ex. 1.2.9.)

Empire NJ's motion for appointment as lead plaintiff was opposed at the time on the grounds that: (1) Sea Carriers owned a portion of the losses asserted by Empire NJ; (2) Empire NJ was represented by three different law firms; (3) Empire NJ failed to provide sufficient information about itself; (4) Empire NJ was subject to unique defenses, including because of its status as a day-trading operation or in-and-out trader; (5) Martin's integrity was open to question based on a 1992 censure and fine assessed against him for violations of the rules of the Chicago Mercantile Exchange; and (6) Empire NJ did not have the resources necessary to oversee and control the litigation. *See Pirelli,* 229 F.R.D. at 414–18. Opposition to Empire NJ's lead plaintiff motion did not include this issue of Empire NJ's financial interest in the action because Empire's dual incorporations in Delaware and New Jersey were not revealed until after Empire NJ had been appointed as co-lead plaintiff.

Empire NJ and Martin have not refuted that although the name on the SLK account on which the relevant trades were executed between September 1998 and November 2003 is Empire Programs, Inc., it cannot be the same Empire Programs, Inc. that was incorporated in New Jersey in 2002 and which filed the complaint and lead plaintiff motion in this action. In his September 20,

2005 deposition, Martin stated that the description of co-lead plaintiff Empire Programs, Inc. included in the Consolidated Class Action Complaint "should have said a Delaware corporation, instead of New Jersey." (McCarrick Decl.App. 1.0, Ex. 1.2.2, 26:22–24.) Also, in a letter to the Court dated October 21, 2005, Martin's counsel indicated that the SLK "opening account form reflects … the tax identification number of Empire DE (not Empire NJ which, again, was not incorporated until 2002)." (*Id.* Ex. D, ¶ 5.) Although Martin claims to have designated Empire NJ as the nominee title holder of the SLK account on August 15, 2003 (Martin Reply Br. 2), he also has acknowledged that the tax identification number on the SLK account statements was never changed. (Martin Decl., Aug. 11, 2006, ¶¶ 13–16 & Ex. G.)

Rather than challenging that it was Empire DE, and not Empire NJ, that was originally associated with the SLK account, Empire NJ and Martin point to the Amended Complaint filed on February 2, 2006, which states, "Empire is the assignee and successor in interest to any claims hereunder originally held by Empire Delaware and any other entity owned and controlled by Plaintiff Martin and doing business as 'Empire Programs, Inc.'" (Martin/Empire Br. in Opp'n 19.) However, Martin and his counsel have contradicted this assertion on several occasions.

For example, an October 21, 2005 letter to the Court in support of adding Martin as a party plaintiff stated, "it is not a safe legal conclusion that Empire New Jersey --- despite its identical name, address, and owner as Empire Delaware --- is a successor in interest or otherwise the owner of the legal claim herein." (McCarrick Decl. Ex. D, ¶ 7.) In addition, in response to questioning during his September 20, 2005 deposition, Martin indicated that he had not assigned any rights of Empire DE to Empire NJ and that Empire NJ had not assumed any liabilities of Empire DE. (*Id.* App. 1.0, Ex. 1.2.2, 30:13–23.)[12] Finally, as previously mentioned,

---

**11.** The proposed class period is from October 17, 1998, to October 15, 2003. *Pirelli,* 229 F.R.D. at 399.

**12.** The deposition transcript reads as follows:

Q: Did you assign any rights of Empire Programs, Inc., Delaware to this new corporation?

A: I did not.

Martin acknowledges that while it may have been his *intent* to transfer the SLK account from Empire DE to Empire NJ, the tax identification number on the SLK account was never changed accordingly. (Martin Decl., Aug. 11, 2006, ¶¶ 13–16 & Ex. G.)

In addition, Martin and Empire NJ appear to make a conflicting argument that Martin, and not Empire NJ, is the real holder of the claims in question. In the very same paragraph of their opposing brief in which they claim that Empire NJ is the assignee and successor in interest to the claim, they also state, "The critical facts here are that plaintiff Robert Martin owns 100% of Empire and owned 100% of its predecessor corporation (Empire Delaware).... If there, ultimately, is any problem with Empire, Mr. Martin will have the claim." (Martin/Empire Br. in Opp'n 19.) In support of his own motion to be appointed lead plaintiff in place of Empire NJ, Martin again asserts that he "is the real party in interest." (Martin Br. in Supp. 13.) Martin also points to the fact that he claimed results of trading in the SLK account on his personal tax returns.[13] (Martin Br. In Supp. 17.)

While the question may remain unresolved as to who is the real party in interest to the claims being asserted by Empire NJ in this litigation, it is undisputed that: (1) Empire NJ was not the title holder of the SLK account when it was opened; and (2) Empire NJ did not trade on the SLK account in question during the majority of the Class Period, if at all. In addition, sufficient proof has not been adduced to establish that at the time of its original lead plaintiff motion, Empire NJ was the assignee or successor in interest to the claim on which Empire NJ's motion rested and on which this Court relied in appointing Empire NJ as co-lead plaintiff.

As a result, it is no longer clear that Empire NJ had the largest financial interest in the litigation at the time of its original lead plaintiff motion and that it could therefore meet the PSLRA's statutory presumption for appointment as lead plaintiff. Regardless of the reason that Empire NJ claimed to have engaged in the relevant securities transactions and moved to be appointed as lead plaintiff, rather than Martin, Empire NJ's appointment as co-lead plaintiff was in error.

Empire NJ cannot now remedy the resulting error by "supplementing" its financial losses more than two years later through the general assertion that it is the "assignee and successor in interest to any claims." (Martin/Empire Br. in Opp'n 19.) Under the PSLRA, within sixty days after the required publication of a notice informing class members of their right to file a motion for appointment as lead plaintiff, any member or members of the proposed class may apply to the Court to be so appointed. 15 U.S.C. § 78u–4(a)(3)(A)(i)(II). Courts have refused to consider additional financial losses asserted by such movants for the first time outside of this sixty-day window. *See, e.g., In re Telxon Corp. Securities Litigation*, 67 F.Supp.2d 803, 818–19 (N.D.Ohio 1999) ("The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed.")

Based on this interpretation of the PSLRA, this Court disregarded supplemental trading losses asserted by both Sea Carriers LP I and CalPERS in conjunction with their respective motions to be appointed lead plaintiff in this action:

> [T]he supplementation of a movant's losses 'is not contemplated by the PSLRA ... [and] supplementation after the expiration of the sixty (60) day period would not only be inconsistent with the language and purposes of the PSLRA, but would effectively nullify the time limits expressly provided therein.' *In re Telxon*, 67 F.Supp.2d at 819.

---

Q: Did it assume any liabilities, the new corporation, of Empire Programs, Inc., Delaware?
A: They did not.
Q: What business has Empire Programs, Inc. of New Jersey engaged in since 2002?
A: None.

**13.** It appears that Empire NJ did not file separate corporate tax returns, raising additional questions as to Empire NJ's interest in the claims being asserted. (*See* McCarrick Decl.App. 1.0, Ex. 1.2.2, 78:17–19; *id.* Ex. D, ¶ 6.)

*Pirelli,* 229 F.R.D. at 410–11. The Court also chose to disregard Sea Carriers LP I's assertion of supplemental trading figures for failure to offer a satisfactory explanation as to why the trading figures—information that was available to Sea Carriers LP I at the time of its original motion—were not included in the original motion. *Id.* at 410 (citing *In re Telxon,* 67 F.Supp.2d at 819).

Empire NJ and Martin have failed to establish that Empire NJ is the "assignee and successor in interest to any claims hereunder originally held by Empire DE and any other entity owned and controlled by Plaintiff Martin and doing business as 'Empire Programs, Inc.' " (Martin/Empire Br. in Opp'n 19.) Instead, Empire NJ and Martin have stated that Martin "easily could have" "moved for lead plaintiff in his own name or in the name of both Empire and Mr. Martin" and attempt to place the burden on Sea Carriers "to explain why" they failed to do so. (*Id.* at 21–22.) Similar to Sea Carriers LP I's omission of a satisfactory explanation for its assertion of supplemental trading losses during the original lead plaintiff appointment process, Empire NJ and Martin have not offered any explanation—other than "inadvertent error"—for why, in light of the information that was available to Empire NJ and Martin at the time of the original lead plaintiff motion, the motion was made to appoint Empire NJ. (*Id.* at 22.)

Therefore, just as this Court disregarded the assertions of supplemental trading losses by Sea Carriers LP I and CalPERS that were made outside of the PSLRA's sixty-day window, this Court will also disregard Empire NJ and Martin's assertions, made years after the fact, regarding the alleged assignment of trading losses to Empire NJ. Accordingly, based on the infirmity in Empire NJ's original motion for appointment as lead plaintiff and Empire NJ's resulting inability to satisfy the lead plaintiff presumption of the PSLRA, the motion to remove Empire NJ as co-lead plaintiff in this action is granted. The granting of this motion in no way impacts the status of CalPERS as a lead plaintiff.

### 2. Motions for Appointment as a Substitute or Additional Co–Lead Plaintiff

#### a. Co–Lead Plaintiff CalPERS Can Continue the Litigation As the Sole Lead Plaintiff

 Based on the circumstances and the information presented at the time of the original lead plaintiff appointment process in this action, it was determined that a co-lead plaintiff structure was appropriate. *Pirelli,* 229 F.R.D. at 418–20. There is, however, no statutory or legal requirement that this co-lead plaintiff structure be maintained. In addition, courts have generally appointed substitute or additional lead plaintiffs only when necessary to ensure the continued representation of the purported class. Finally, as explained below, the reasoning that previously supported the establishment of a co-lead plaintiff structure now indicates that maintaining CalPERS as the sole lead plaintiff in this action is warranted at this time.

#### i. The PSLRA Does Not Require a Co–Lead Plaintiff Structure

A co-lead or multiple lead plaintiff structure is by no means dictated by the PSLRA. *See generally* 15 U.S.C. § 78u–4. In making the original determination regarding the appointment of lead plaintiffs in this action, it was observed that "Federal courts have reached varying conclusions concerning the propriety of appointing co-lead plaintiffs or multiple lead plaintiffs under the PSLRA." *Pirelli,* 229 F.R.D. at 418. Where many courts have chosen to appoint co-lead or multiple lead plaintiffs, *see id.* at 419 (citing cases), others have refused to do so on the grounds that such a structure was not envisioned by the PSLRA or would undermine the aims of the statute, *see id.* at 418 (citing cases), or because the need for such a structure was not established by the circumstances of the particular case, *see id.* at 419–20 (citing cases).

#### ii. Appointments of Substitute and Additional Lead Plaintiffs Are Limited

Overall, courts have generally restricted appointment of substitute and additional lead plaintiffs to those instances where it is neces-

sary to maintain representation of the prospective class. *See, e.g., In re IPO III*, 2004 WL 3015304 (granting motions to substitute lead plaintiffs where appointed lead plaintiffs either withdrew or were not qualified); *In re IPO II*, 224 F.R.D. at 551–52 (granting motions to substitute and add lead plaintiffs where appointed lead plaintiffs moved to withdraw or were unavailable); *In re IPO I*, 214 F.R.D. at 120–22 (granting motions to substitute lead plaintiffs where appointed lead plaintiffs had withdrawn); *In re Baan II*, 2002 WL 32307825, at *3–4 (approving appointment of substitute lead plaintiffs where claims of two out of three appointed lead plaintiffs were dismissed and court found remaining lead plaintiff alone could not adequately protect the interests of the purported class). That is not the case here. While a co-lead plaintiff structure could provide certain advantages, CalPERS can continue to adequately represent the class as the sole lead plaintiff. In situations similar to the instant case where at least one adequate lead plaintiff remains in place, courts have chosen not to re-open the lead plaintiff process. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. at 485 n. 15.

### iii. *Prior Reasoning Now Supports Maintaining CalPERS as the Sole Lead Plaintiff*

In appointing co-lead plaintiffs in this action, the Court reasoned that a co-lead plaintiff structure would: (1) help ensure that adequate resources and experience were available to the prospective class in prosecuting this action; (2) provide the benefits of joint decision-making; and (3) establish greater stability in the event that either of the co-lead plaintiffs was found to no longer meet the requirements or responsibilities of lead plaintiff. *Pirelli*, 229 F.R.D. at 420. This same reasoning now supports maintaining CalPERS as the sole lead plaintiff at this point in the litigation.

First, during the lead plaintiff appointment process, CalPERS challenged Empire NJ's candidacy for lead plaintiff by arguing, in part, that Empire NJ did not have the experience, resources, or in-house legal team necessary to adequately oversee and control this complex litigation. *Id.* at 417. While these claims were undisputed, they were also found to be insufficient to rebut the presumption of Empire NJ's adequacy as lead plaintiff. Instead, CalPERS was appointed co-lead plaintiff, in part, to complement Empire NJ in this regard. *Id.* at 418, 420. Therefore, maintaining CalPERS as the sole lead plaintiff in no way undermines the representation of the prospective class in terms of the adequacy of the resources and legal expertise available to pursue the litigation.

Second, while a co-lead plaintiff structure was originally established to provide the benefit of joint-decision making, any such additional benefits must now be balanced against the delay and disruption of appointing a new co-lead plaintiff (and possibly new lead counsel).[14] Empire NJ was appointed co-lead plaintiff, in part, because it was determined that it had the largest financial interest in market orders placed over SuperDOT, whereas CalPERS was deemed to have the largest financial interest in large block transactions. *Id.* at 411. Although not without misgivings regarding the adequate representation of the absent SuperDOT members of the purported class, this balancing of adequacy and efficiency tips in favor of maintaining CalPERS as the sole lead plaintiff, with additional named plaintiffs and class representatives to be added as needed.

Sea Carriers has argued that Empire NJ's removal will result in a "vacancy" in the co-lead plaintiff structure that CalPERS cannot fill. (Sea Carriers Br. in Supp. 19; Sea Carriers Br. in Opp'n 20–21.) According to Sea Carriers, CalPERS falls short in this regard due to its placement of a relatively low number of market orders through Super-DOT and its adoption of positions that conflict with the best interests of SuperDOT class members.[15] (Sea Carriers Br. in Opp'n

---

**14.** Discovery in this action has been ongoing since March 2006 and is scheduled to be completed by March 2, 2007.

**15.** CalPERS has already been found to be an adequate representative of a class that includes absent SuperDOT traders, despite its prior arguments minimizing the relevance of SuperDOT-related claims. *See Pirelli*, 229 F.R.D. at 413.

20–21.) As pointed out by CalPERS' co-lead counsel,[16] however, if CalPERS were to be appointed the sole lead plaintiff, nothing in the statute would preclude CalPERS from adding named plaintiffs and class representatives as needed to adequately and effectively represent all of the interests of the purported class, including those of the absent Super-DOT members. *See, e.g., Fishbury, Ltd.,* 2006 WL 3711566, at *4 ("If certain class claims cannot be advanced because of standing or class-certification issues, this deficiency can be corrected by the designation of other member of the purported class as named plaintiffs or class representatives." (citing *Hevesi,* 366 F.3d at 83; *In re Global Crossing, Ltd. Sec. Litig.,* 313 F.Supp.2d 189, 204–05 (S.D.N.Y.2003); *In re IPO I,* 214 F.R.D. at 123)); *In re WorldCom, Inc. Sec. Litig.,* 219 F.R.D. at 286 ("The PSLRA does not prohibit the addition of named plaintiffs to aid the Lead Plaintiff in representing the class.").[17]

CalPERS is exactly the type of institutional investor that Congress intended to serve as lead plaintiff when it passed the PSLRA. *See, e.g., Glauser v. EVCI Ctr. Colls. Holding Corp.,* 236 F.R.D. 184, 188 (S.D.N.Y.2006) (citing *In re Veeco Instruments, Inc.,* 233 F.R.D. 330, 332–33 (S.D.N.Y.2005); *In re Cendant Corp. Sec. Litig.,* 404 F.3d 173, 180 (3d Cir.2005); H.R.Rep. No. 104–369, at 11, *as reprinted in* 1995 U.S.C.C.A.N. at 690). Therefore, pursuant to Congressional intent and with the strong expectation that CalPERS will move to appoint additional named plaintiffs and class representatives as needed to adequately represent all of the interests of the purported class, including SuperDOT market order traders, CalPERS can fulfill the role of lead plaintiff on its own.

Finally, in the original determination regarding lead plaintiffs in this action, co-lead plaintiffs were appointed so as to provide "greater stability" under the exact circumstances now presented. *Pirelli,* 229 F.R.D. at 420. The possibility was foreseen that "at some later stage in the litigation ... either co-lead plaintiff will not adequately represent the class or ... the financial interest of one of the co-lead plaintiffs [will] demonstrably eclipse[ ] that of the other co-lead plaintiff." *Id.* A co-lead plaintiff structure was therefore adopted not so that the inadequate co-lead plaintiff would have to be replaced, as is now urged by both Sea Carriers and Martin, but to avoid the very disruption that could be caused by such a substitution.

Therefore, again, "[i]n light of the novel circumstances of these consolidated actions and the Court's acknowledged discretion in the lead plaintiff appointment process," *Pirelli,* 229 F.R.D. at 420, it is deemed appropriate at this point in the litigation to maintain CalPERS as the sole lead plaintiff. This determination is made with the strong expectation that CalPERS will move to add named plaintiffs and class representatives as necessary to adequately represent all of the interests of the purported class.

**b.** ***The Motions By Sea Carriers and Martin to Be Appointed Co-Lead Plaintiff Are Untimely***

■ As previously discussed, under the PSLRA, the Court is required to appoint "the most adequate plaintiff" as lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(i). The court is also required to adopt a presumption that the most adequate plaintiff is that plaintiff that meets three requirements, the first of which is that the plaintiff either filed the complaint or filed a motion to serve as lead plaintiff within sixty days of publication of the required notice. *Id.* at 78u–4(a)(3)(B)(iii)(I)(aa).

Courts have interpreted this and other time limitations in the PSLRA to be a reflec-

---

**16.** *See* Letter from William J. Doyle II, October 10, 2006.

**17.** It is the well established law of this Circuit that a district court need not choose a lead plaintiff with standing to bring all claims in a securities class action. *Hevesi,* 366 F.3d at 82; *Fishbury, Ltd.,* 2006 WL 3711566, at *4; *In re Global Crossing, Ltd. Sec. Litig.,* 313 F.Supp.2d at 204–05. Furthermore, "that the court should cobble together a lead plaintiff group that has standing to sue on all possible causes of action— has been rejected repeatedly by courts in this Circuit and undermines the purpose of the PSLRA." *In re IPO I,* 214 F.R.D. at 123 (citing *In re Razorfish, Inc. Sec. Litig.,* 143 F.Supp.2d 304, 308 (S.D.N.Y.2001); *In re Crayfish,* 2002 WL 1268013, at *5).

tion of Congress's intent that the lead plaintiff be appointed as early as possible in the litigation. *See, e.g., Pirelli*, 229 F.R.D. at 406 (citing *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 440 (S.D.Tex.2002); *In re MicroStrategy Inc. Sec. Litig.*, 110 F.Supp.2d 427, 433 n. 12 (E.D.Va.2000); *In re Telxon*, 67 F.Supp.2d at 818–19). As a result, courts have strictly construed this time limitation and found those motions for appointment as lead plaintiff filed outside of the sixty-day window to generally be time-barred. *See, e.g., Skwortz v. Crayfish Co., Ltd.*, No. 00 CIV. 6766(DAB), 00 CIV. 6978(DAB), 00 CIV. 6998(DAB), 00 CIV. 7009(DAB), 00 CIV. 7141(DAB), 00 CIV. 7250(DAB), 00 CIV. 7263(DAB), 00 CIV. 7498(DAB), 00 CIV. 7682(DAB), 00 CIV. 7939(DAB), 00 CIV. 8214(DAB), 2001 WL 1160745, at *5 (S.D.N.Y. Sept. 28, 2001) ("an untimely motion has the effect of preventing the proposed Group from satisfying the first requirement of the most adequate plaintiff presumption"); *In re MicroStrategy Inc.*, 110 F.Supp.2d at 433 ("A motion filed after the sixty-day period by a person who has not filed a complaint, however, is untimely, and may not, except perhaps in rare circumstances, be considered by a court."); *In re Telxon*, 67 F.Supp.2d at 818 ("The PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action.").

In general, courts have only considered lead plaintiff motions filed outside of the sixty-day window when necessary to have a lead plaintiff to represent the class. *See Coopersmith v. Lehman Bros., Inc.*, 344 F.Supp.2d 783, 791 (D.Mass.2004) ("Many other courts have recognized that where the 60 day period has expired, and there is no lead plaintiff for whatever reason, other ap-

plicants can and should be properly considered."); *compare Carson v. Clarent Corp.*, No. C 01–03361CRB, 2001 WL 1782712, at *2 (N.D.Cal. Dec.14, 2001) (refusing to consider untimely lead plaintiff motion when three other motions were timely filed); *Skwortz*, 2001 WL 1160745, at *5 (refusing to consider untimely lead plaintiff motion even where there were no other timely motions before the court because those parties filing complaints could be considered); *In re MicroStrategy*, 110 F.Supp.2d at 439–40 (refusing to consider untimely lead plaintiff motion where there were other timely motions before the court); *with In re IPO I*, 214 F.R.D. at 120 (considering motion to be appointed as substitute lead plaintiff filed within sixty days of the withdrawal of the previous lead plaintiff). In such circumstances, some courts have formally re-opened the lead plaintiff process by providing for a new notice and motion period. *See, e.g., In re Xerox Sec. Litig.*, 2006 WL 1359339, at *1 (requiring new notice to determine whether others wished to serve as lead plaintiff before any appointment was made); *cf. In re IPO I*, 214 F.R.D. at 120 n. 5 (finding no need to file a new notice and re-open the process where a new lead plaintiff has stepped forward and all putative class members were given notice of the opportunity by the original notice).

With respect to the consolidated class actions herein and pursuant to the PSLRA's sixty-day limitation, all motions to be appointed lead plaintiff were required to have been filed no later than December 16, 2003. *Pirelli*, 229 F.R.D. at 403.[18] Neither Sea Carriers' nor Martin's motion to be appointed co-lead plaintiff is timely under the statute.[19] The motions were filed in March 2006 and August 2006, respectively, both years

---

18. In its earlier opinion, the Court recognized that "courts may, and have, deemed class members ineligible to serve as lead plaintiff based solely on the tardiness of their filings...." *Pirelli*, 229 F.R.D. at 403 (citing *Schulman v. Lumenis, Ltd.*, Nos. 02 Civ. 1289(DAB) *et al.*, 2003 WL 21415287, at *4 (S.D.N.Y. June 18, 2003); *Carson*, 2001 WL 1782712, at *2). In its discretion, the Court considered CalPERS' motion to be appointed lead plaintiff because there may have been a docketing irregularity, even though the papers may also have been filed one day late. *Id.*

19. Neither Sea Carriers Corporation nor Martin filed a motion to be appointed lead plaintiff in response to the original notice published in these actions. The relevant lead plaintiff motions were filed by Sea Carriers LP I, a limited partnership firm trading in equity securities, and not Sea Carriers Corporation, a Delaware corporation; and Empire Programs, Inc. of New Jersey, of which Martin is the sole shareholder. *See Pirelli*, 229 F.R.D. at 399–400.

after the time for filing had expired. Since CalPERS remains in place as lead plaintiff, there is no compelling reason for the Court to make an exception and consider these motions outside of the sixty-day window.

Additionally, since all putative class members were given notice of the opportunity to move for appointment as lead plaintiff by the original motion, there is no need for the Court to re-open the process by ordering a new notice and motion period. *See In re IPO I*, 214 F.R.D. at 120 n. 5. It is also noted that Sea Carriers, Martin, and CalPERS have all argued in support of strict application of the sixty-day time limitation on motions for appointment as lead plaintiff. (*See* CalPERS Mem. in Opp'n, Sept. 26, 2006, 3–4; Sea Carriers Br. in Opp'n 9; CalPERS Mem. in Opp'n, Sept. 14, 2006, 8–9; Martin/Empire Br. in Opp'n 22–23; CalPERS Mem. in Opp'n, Mar. 20, 2006, 4–6.) Therefore, strictly applying the sixty-day limit set forth in the PSLRA, the motions of both Sea Carriers and Martin to now be appointed co-lead plaintiff are denied as untimely. Since there is already an adequate lead plaintiff in place to represent the purported class, consideration of these motions is also unnecessary.

### c. *Martin Does Not Satisfy the PSLRA's Presumption of Most Adequate Plaintiff*

■ In support of his motion to be appointed co-lead plaintiff, Martin has argued that he should be substituted for Empire NJ even after the PSLRA's sixty-day period has expired because of his "identity of interests" with Empire NJ. Specifically, Martin has asserted that: (1) when an identity of interests is present, courts generally grant substitution of plaintiffs; (2) courts have allowed parties having an identity of interests with the lead plaintiff movant to execute a new lead plaintiff certification after the sixty-day period has expired and to thereby be substituted for the original movant and appointed lead plaintiff; and (3) Martin is the real party in interest in these actions. (*See* Martin Br. in Supp. 9–25.) These arguments are unpersuasive in light of Martin's inability to satisfy the PSLRA's presumption of most adequate plaintiff.

First, Martin's argument pertaining to plaintiff substitution under Rules 15 and 17, Fed.R.Civ.P., has no relevance to his motion to be substituted as lead plaintiff. As the cases to which Martin cites in support of this argument show (*id.* 9–10), two of the primary concerns with respect to plaintiff substitution are that: one, a legitimate claim not be dismissed because of the original plaintiff's lack of standing; and two, defendants not be prejudiced by the substitution. *See, e.g., Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 19–21 (2d Cir.1997); *Shaev v. Hampel*, No. 99 Civ. 10578(RMB), 2002 WL 31413805, at *4 (S.D.N.Y. Oct. 25, 2002); *Andujar v. Rogowski*, 113 F.R.D. 151, 155 (S.D.N.Y.1986). These are not the same concerns that effect the substitution of lead plaintiffs, however, where the primary concern is instead that the most adequate plaintiff be appointed to represent the purported class. *See supra.* Furthermore, the Court has already allowed for Martin to be added to the Complaint as a party plaintiff pursuant to Rules 15 and 17. (*See* Amended Complaint 12–13; McCarrick Decl. Ex. D.)

Second, the cases to which Martin refers in support of permitting the amendment of a lead plaintiff motion outside of the PSLRA's sixty-day window are distinguishable. In both *Kassin v. VA Linux Systems, Inc.*, 01 Civ. 2085MGC (S.D.N.Y.) (Cederbaum, J.), and *Meigs v. Quality Distribution, Inc.*, 8:04–civ–335–T–24 MSS, 8:04–civ–817–T–24 MSS (M.D.Fla.) (Bucklew, J.), the substitutions were permitted *prior* to any appointment of lead plaintiff by the court. (*See* Martin Br. in Supp. Exs. A & B.) In the instant case, however, it has been well over two years since the co-lead plaintiffs were originally appointed. In addition, in both *Kassin* and *Meigs*, there was no continuing dispute as to the real holder of the claim (*see id.*), which is not the case here. *See supra.*

There remains Martin's final argument that he is the real party in interest in these actions and therefore the most adequate lead plaintiff. However, even if Martin were determined to be the real party in interest to the claims originally brought against the Specialist Defendants by Empire NJ, he cannot satisfy the adequacy requirement of Rule

23(a) and therefore does not meet the statutory presumption of most adequate plaintiff. *See* 15 U.S.C. § 78u–4(A)(3)(B)(iii)(I)(cc); *see also, e.g., Fishbury, Ltd.,* 2006 WL 3711566, at *2 (indicating that only the typicality and adequacy prongs of Rule 23 need be considered for purposes of appointing lead plaintiff).

The Second Circuit has allowed for the consideration of characteristics such as honesty, trustworthiness, and credibility in judging the adequacy of a class representative pursuant to Rule 23(a). *See, e.g., Savino v. Computer Credit, Inc.,* 164 F.3d 81, 87 (2d Cir.1998) (citing *Kline v. Wolf,* 702 F.2d 400, 402–03 (2d Cir.1983) (citing *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 549–60, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949))); *Panzirer v. Wolf,* 663 F.2d 365, 368–69 (2d Cir. 1981), *vacated on other grounds,* 458 U.S. 1105, 102 S.Ct. 3481, 73 L.Ed.2d 1365 (1982). In addressing the initial motions for lead plaintiff in this action, it was acknowledged that "honesty and trustworthiness are relevant factors in assessing a candidate's ability to serve as an adequate fiduciary for a class." *Pirelli,* 229 F.R.D. at 416 (citing *Savino,* 164 F.3d at 87; *Kline,* 702 F.2d at 403).

Such considerations of trustworthiness and credibility are not without limitation, however, but instead are restricted to their relevance to issues in the litigation. As has previously been noted:

> [A]ny allegations concerning the representative's adequacy must be relevant to the claims in the litigation, such that the problems "could become the focus of cross-examination and unique defenses at trial, to the detriment of the class." Plaintiffs' testimony or credibility that is subject to attack must be "on an issue critical to one of their . . . causes of action."

*German v. Fed. Home Loan Mortgage Corp.,* 168 F.R.D. 145, 154 (S.D.N.Y.1996) (internal citations omitted) (finding representative adequate due to the irrelevance of the alleged unique defenses and challenges to plaintiff's background); *compare Savino,* 164 F.3d at 87 (upholding decision of inadequacy where proposed class representative lacked credibility as a result of his "differing accounts about the letters that form the very basis for his

lawsuit"); *Kline,* 702 F.2d at 403 (upholding decision to deny role as class representatives when "testimony on an issue critical to one of their two causes of action was subject to sharp attack"); *with Cromer Fin. Ltd. v. Berger,* 205 F.R.D. 113, 125 (S.D.N.Y.2001) (refusing to bar class representatives on grounds of credibility where it was not clear that plaintiffs lied or fabricated testimony); *In re Sumitomo Copper Litig.,* 182 F.R.D. 85, 96 & n. 16 (S.D.N.Y.1998) (refusing to find class representative inadequate based on credibility of testimony regarding matters not critical to the lawsuit).

Martin and Empire NJ have asserted that "[f]ar from being 'critical' to the lawsuit, Empire's internal organization is peripheral to the suit and irrelevant to the class' claims." (Martin/Empire Br. in Opp'n 18.) In addition, Martin has argued that Sea Carriers' assertions of misrepresentations made by Martin "do not raise a legally relevant attack on adequacy (and may themselves be in error)." (Martin Br. in Supp. 22.)

Despite Martin's efforts to minimize the significance of his actions, the failure of Martin and Empire NJ to have the complaint and lead plaintiff motion in this action filed by the entity which actually purchased shares during the class period is not inconsequential. *See In re IPO III,* 2004 WL 3015304, at *7 ("a failure to offer a lead plaintiff who purchased shares during the class period [ ] is not an 'inconsequential pleading error' "). Martin has also repeatedly submitted or caused to be submitted to this Court signed statements regarding Empire NJ's securities transactions during the proposed class period and Empire NJ's ownership of the claims asserted in this consolidated action, the validity of which have been called into question. (*See, e.g.,* McCarrick Decl. Ap. 1.0. Ex. 1.2.5, ¶¶ 6, 11; *id.* Ex. 1.2.6, ¶¶ 2,3; Certification of Empire Programs, Inc. by R. Allan Martin, Dec. 16, 2003, ¶ 4.)

Mistakes of this nature are not unusual. *See, e.g., In re IPO III,* 2004 WL 3015304, at *1, 7 (granting motions to substitute lead plaintiffs where appointed lead plaintiffs had not purchased shares or had not purchased shares during the class period); *In re IPO II,* 224 F.R.D. at 555 (granting motions to

substitute lead plaintiffs where original lead plaintiff motions were made on behalf of the wrong party). Martin's assertions that these acts were merely the result of "inadvertent error," however, in no way diminish their impact on Martin's adequacy as a possible lead plaintiff in this litigation. Upholding the district court's denial of class representative certification in *Kline v. Wolf*, the Second Circuit determined that even if the testimony that subjected the plaintiff to attacks on his credibility "was the product of an innocent mistake," it still subjected the plaintiff's "credibility to serious question." 702 F.2d at 403. So, here, is Martin's adequacy as lead plaintiff now sufficiently in doubt.

This renewed issue of Martin's adequacy, when viewed in conjunction with prior questions regarding Martin's integrity,[20] militates against appointing Martin as co-lead plaintiff at this time.

*Conclusion*

Based on the foregoing discussion, Sea Carriers' motion to disqualify and remove Empire NJ as co-lead plaintiff in this action is granted. Sea Carriers' motions to replace Empire NJ as co-lead plaintiff is denied, as is Martin's motion to be appointed co-lead plaintiff in place of Empire NJ. The denial of Sea Carriers' motion to be appointed co-lead plaintiff renders moot its motion to appoint Becker Meisel as co-lead counsel. The lead counsel motion is therefore denied as well.

CalPERS will continue as the lead plaintiff in these consolidated actions. It is expected that CalPERS will move to designate named plaintiffs and class representatives as necessary to continue the adequate representation of all interests of the purported class. The Court continues to reserve its right to reopen the appointment of lead plaintiff should

reasons develop indicating the need to revisit the lead plaintiff designation made herein.

It is so ordered.

---

**20.** Based on a 1992 fine assessed against Martin for violations of the rules of the Chicago Mercantile Exchange, CalPERS attempted to rebut the presumption of Empire NJ's adequacy as lead plaintiff during the initial lead plaintiff appointment process. *Pirelli*, 229 F.R.D. at 416. It was determined at the time that the violations did not warrant the rejection of Empire's candidacy due to the "absence of any specific connection between the types of violations claimed and the execution fraud alleged here." *Id.* at 416–17 (citing *Zemel Family Trust v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 436 (S.D.N.Y.2002); *Weis-*

*man v. Darneille*, 78 F.R.D. 669, 670–71 (S.D.N.Y.1978); *Amswiss Int'l Corp. v. Heublein, Inc.*, 69 F.R.D. 663, 669–71 (N.D.Ga.1975)).

